# BROWN et ux. v. CLEVERLY et ux.

No. 5844.   Decided August 3, 1937.   (70 P. [2d] 881.)

*J. J. Whitaker,* of Salt Lake City, for appellants.

*Hammond & Thatcher,* of Bountiful, and *J. T. Hammond, Jr.,* of Salt Lake City, for respondents.

HANSON, Justice.

This is an appeal by the plaintiffs from the judgment of the district court of Davis county denying plaintiffs' application to impose an equitable lien upon certain real property in Davis County for the amount of the judgment theretofore obtained by plaintiffs against defendants in an action to rescind a contract of purchase covering said real property and to recover as damages the amount of money paid on said contract by plaintiffs as purchasers under said contract.

Certain phases of this action have been considered heretofore by this court under an application for a writ of prohibition, in pursuance of which a writ was issued and made permanent, as appears in *Cleverly* v. *District Court of Second Judicial Dist.,* 85 Utah 440, 39 P. (2d) 748, 749. The facts leading to the application for the writ of prohibition are stated in the opinion in that case, and, since they are likewise pertinent here, we quote from that opinion as follows:

"It appears that on or about April 22, 1929, J. W. Cleverly and Minnie B. Cleverly, his wife, by written contract agreed to sell to Zem Brown and Emma Brown, his wife, the real estate involved in this controversy, together with certain live stock and implements on the place for the sum of $6,500, $1,500 of which was paid and the balance payable at the rate of $50 per month. The property consisted of five or six acres of improved land located in Davis county. The Browns went into possession, and at a later date leased the premises to a Mr. Waite, who remained on the place for several months. The Cleverlys, claiming the Browns were in default under the terms of the contract, repossessed the premises early in 1931. Thereupon [on May 28, 1931], the Browns brought suit against the Cleverlys for rescission of the contract and return of the moneys paid thereunder as damages, alleging that they had not been in default, and that the repossession of the premises by the Cleverlys had been wrongful; that the Cleverlys had by 'fraudulent inducement, collusion and notice persuaded and induced the said Fenton H. Waite, lessee, to vacate the said premises and property.' In that action defendants filed an answer to which plaintiffs filed a reply. The cause was fully tried on the merits and decided in favor of the Browns and against the Cleverlys. Findings of fact, conclusions of law, and decree were signed and filed and judgment entered. By the decree, the contract of sale was canceled and held for naught; and plaintiffs were given judgment for $2,488.60 as prayed for in their complaint, together with attorney's fees and interest. Plaintiffs did not pray that an equitable lien be impressed on the property as for a purchase-money debt, and no such lien was provided for in the decree. * * * No appeal was taken, and the judgment became final. Execution was issued and returned unsatisfied. The plaintiffs thereupon obtained an order from the court requiring the defendants to appear and answer respecting their property. Defendants were examined on the 17th of September, 1932, and the matter taken under advisement by the court. On the 15th of October, 1932, the court made and entered an order wherein the real and personal property involved was held to be subject to the judgment, and the sheriff directed to sell the same on execution. Application was made in November of 1933 by the Cleverlys for modification of the order of October 15, 1932, which application was denied by the court as not having been made within time. A new execution was then issued, and, while it was outstanding, on or about the 10th day of February, 1934, the Cleverlys filed a verified petition in the district court asking for an order requiring the plaintiffs to show cause why the court should not amend its order of October 15, 1932, in certain stated respects, and recall and quash the execution. In that petition it was alleged that J. W. Cleverly

had been adjudged a bankrupt in the United States District Court on September 15, 1932, and that in such bankruptcy proceedings the judgment in favor of the Browns was discharged as to J. W. Cleverly and the real property herein involved set apart as Cleverly's homestead, and further that the defendants had selected the real property involved as their homestead, and on March 14, 1932, had filed for record in the office of the county recorder of Davis county their declaration of homestead describing the identical property involved in these proceedings. This petition was also denied by the district court. A petition was then filed in this court praying for a writ prohibiting the district court from enforcing its order of October 15, 1932."

In the opinion just quoted from we held that the court exceeded its jurisdiction in making its order of October 15, 1932, and prohibited the enforcement of that order without prejudice, however, to the district court in proper proceedings, determining the question of homestead exemption and the effect of the discharge in bankruptcy of defendant J. W. Cleverly.

On June 28, 1935, and after a remittitur had been filed in the district court, the district court, upon plaintiffs' motion supported by an affidavit, ordered defendants to appear and answer concerning their property and to set up any claim that they might have to a homestead right to the property in question, and to a discharge in bankruptcy from plaintiff's said judgment. After defendants had answered this affidavit, the plaintiffs, on August 15, 1935, filed an amended affidavit and petition in which they set out the making of the contract of purchase, the payment by plaintiffs of $2,335 on the contract, the wrongful ousting of plaintiffs from the possession of said property by defendants, the bringing of the action by plaintiffs, the entry of judgment of $2,488 in plaintiffs' favor, the return of the execution unsatisfied because of defendants' claims of exemption and discharge in bankruptcy, and the failure of plaintiffs to obtain a repayment of their money on account thereof. It is alleged, also, that, by reason of these homestead and bankruptcy claims, said judgment has become wholly inadequate to give plain-

tiffs relief to which they are entitled; that defendants are without funds to repay plaintiffs the money paid by them on the purchase price and the property described is the only property held by defendant, and to permit them to obtain said money because of such claims amounts to a fraud against plaintiffs, defendants being trustees of plaintiffs as to said money. The plaintiffs prayed that defendants be required to set forth their claims of exemption by reason of their homestead and bankruptcy claim, and that the court decree to plaintiffs an equitable lien on said real property, and provide a means for foreclosing the same.

Defendants filed a general and special demurrer and a motion to strike certain portions of the amended affidavit and petition. The demurrer was overruled and the motion denied. The answer of defendants proceeded upon the theory that the judgment obtained by plaintiffs originally was for damages for breach of contract and no equitable lien was impressed by that judgment upon the property in question. There are allegations to the effect that the original judgment is void for reasons stated, but these allegations are not material to a disposition of the issues here before us. Defendants also alleged that defendant J. W. Cleverly was discharged in bankruptcy from plaintiffs' judgment, and that in said bankruptcy proceedings the said real property was set apart to said defendant as his homestead and as exempt. Finally defendants alleged that the action to impress a vendee's lien upon the said real property was barred by section 104-2-30, R. S. Utah 1933.

The matter was heard on plaintiffs' amended affidavit and petition and defendants' answer thereto. No evidence was introduced at the hearing except, by stipulation of the parties, the files in the original action were received in evidence. The trial court held that the proceedings to impress a vendee's lien against the real property in question was a cause of action separate and distinct from the action brought to recover the payments made on the contract of purchase and would be barred, by virtue of section 104-2-30, R. S. 1933,

in four years from the time the right to have such lien impressed arose, and that such right arose and existed at the time plaintiffs commenced their action by filing their complaint on May 28, 1931. No action to impress such lien was commenced until August 15, 1935, when plaintiffs filed their amended affidavit and petition. The trial court further held that the judgment against J. W. Cleverly was a provable debt in bankruptcy and was discharged. The record in evidence contained a certificate from the clerk of the District Court of the United States, District of Utah, certifying that this judgment was listed in the bankruptcy schedules, and that on September 23, 1933, an order was made by the court discharging said defendant from all debts made provable by the Bankruptcy Acts. This certificate, the trial court held, was sufficient proof to sustain defendants' plea of a discharge in bankruptcy.

Findings of fact embodying the foregoing statements of fact were made and a judgment entered denying plaintiffs' claim to an equitable lien and discharging the proceedings as to defendant J. W. Cleverly. Execution was ordered issued to be levied on whatever interest defendant Minnie B. Cleverly had in the real property involved.

The questions presented by this appeal are: First, is the claim of plaintiffs to an equitable lien barred by section 104-2-30, R. S. 1933? Second, is plaintiffs' judgment debt and lien discharged as to defendant J. W. Cleverly by his discharge in bankruptcy? We shall proceed to dispose of these questions without expressing any opinion as to whether the plaintiffs' attempt to have an equitable lien established was properly presentable in connection with a supplemental proceeding. The trial court considered the matter on its merits and we are inclined to do the same.

As heretofore stated, by its original judgment the district court canceled and held for naught the contract of purchase and sale between plaintiffs and defendants covering the real property here involved, having found that defendants had

wrongfully repossessed said property and breached their contract. In addition, plaintiffs were given judgment for the amount they had paid to defendants on account of the purchase price under said contract. That judgment is final and disposes of the contract of purchase and sale. It proceeded upon the well-established rule that, where a seller under an executory contract of sale terminates or breaches such agreement without right and without default on the part of the buyer, the latter, in lieu of an action for damages for breach of the contract, may bring an action to rescind the contract and recover the amount paid by him on the contract. 5 Thompson on Real Property, § 433.

It is also well established by the decisions in this country "that a vendee who has paid a part of the purchase price of land under a contract for its purchase has a lien on the land for its repayment, where the contract fails or is avoided through the failure or refusal of the vendor to comply with the contract without fault on the part of the vendee." 127 Am. St. Rep. 873, note to *Elterman* v. *Hyman*, 192 N. Y. 113, 84 N. E. 937, 15 Ann. Cas. 819; note, 45 A. L. R. 353; 3 Tiffany on Real Property (2d Ed.) 2765, § 667. That the vendee may have a lien for the purchase money paid by him is recognized by this court in *United States Bldg. & Loan Ass'n* v. *Midvale Home Finance Corp.*, 86 Utah 506, 44 P. (2d) 1090. This lien is sometimes spoken of as the counterpart of the vendor's lien (3 Pomeroy, Equity Jur. [3d Ed.] § 1263), but it exists separate and apart from the vendor's lien and does not depend thereon for its existence (*Larson* v. *Metcalf*, 201 Iowa, 1208, 207 N. W. 382, 45 A. L. R. 344). The cases involving and recognizing the existence of a vendee's lien are numerous and various reasons have been assigned for its existence. The foundations for this lien are variously assigned as natural equity, imputed intention, partial ownership, the implication of a trust, or a blending of some of these sources. *Elterman* v. *Hyman*, supra. We do not deem a discussion or an exact definition by us of the underlying source of this lien necessary to this opinion and

shall content ourselves with the observation that the lien has been recognized and enforced by courts of equity to prevent injustice, and springs from the broad powers with which such courts are invested.

The contract of purchase and sale involved in this action does not contain any express provisions giving plaintiffs, as purchasers, a right to recover the purchase money paid by them in the event of the defendants' failure or refusal to perform, nor does it give, by express provision, a vendee's lien for such payments. The plaintiffs commenced their action to recover the payments made by them and to rescind the contract May 28, 1931. They did not ask the court to decree a lien against the premises involved for the amount of the judgment sought and no such lien was provided for in the judgment. It was not until August 15, 1935, more than four years later, that plaintiffs first sought to impress a vendee's lien upon the real property covered by the contract of purchase. Since the defendants have interposed as a defense to plaintiffs' claims to a lien, the statute of limitations (section 104-2-30, R. S. 1933), which creates a four-year period, and the lower court sustained such defense, it becomes important to inquire into the nature and source of the right relied upon by plaintiffs.

We must consider first whether plaintiffs' right to recover the purchase money paid by them is founded upon the written contract although it contains no express provision covering such right. If founded upon such contract, then section 104-2-22, R. S. 1933, fixing the limitation at six years, would be applicable. We are of the opinion that plaintiffs' right to recover the payments made by them rests, not upon the written contract, but upon an implied promise, created by law, of defendants to repay the purchase money paid if they should default in the performance of the contract. The action could not be based upon the written contract, for it contained no promise by defendants to return the purchase price. While it is true that the payments were made under the written contract and the relations of the parties were to that ex-

tent affected by the writing, yet that instrument is not declared on in the action to recover the payments made as the basis of the right to recover. It is only an incident to the accrual of the right to recover. The basis for a recovery rests in the implied promise of defendants to return the purchase money which the law creates from their duty to return it upon failure by them to perform the contract and give plaintiffs what they contracted for. The action rests in implied assumpsit as for money had and received. *Duncan* v. *Gisborn*, 17 Utah 209, 53 P. 1044; *Thomas* v. *Pacific Beach Co.*, 115 Cal. 136, 46 P. 899; *d'Artenay* v. *Hansen*, 138 Cal. App. 39, 31 P. (2d) 460; *Schaeffer* v. *Miller*, 41 Mont. 417, 109 P. 970, 137 Am. St. Rep. 746; *Staley* v. *Snow*, 209 Ill. App. 452; *Ball* v. *Roney*, 112 Fla. 186, 150 So. 240; *Webb* v. *Powell* (C. C. A.) 87 F. (2d) 983.

The right to have the amount of the purchase money paid declared a lien upon the property here involved likewise does not rest upon any provision of the written contract. The power to decree such a lien, therefore, does not spring from the contract but arises from the broad powers of a court of equity as an incident to a rescission of the contract to secure to the purchaser a return of his money by resorting to the land itself. *Witte* v. *Hobolth*, 224 Mich. 286, 195 N. W. 82; 45 A. L. R., note, at page 362. The right to have an equitable lien declared would be governed, therefore, by the four-year period of limitation rather than the six-year period governing actions founded on written instruments.

The proceeding to establish the vendee's lien was commenced by a petition in the original action, which petition also sought to invoke a form of the statutory supplemental proceedings on failure of execution. It is contended by plaintiffs that the various orders made by the court in prior supplemental proceedings operated to toll the statute of limitations with respect to the right to assert an equitable lien. With this we cannot agree. We are of the opinion that the statutory supplemental proceedings have no connection whatever with the plaintiffs' claim to an equitable lien and the

orders of the court in such proceedings may not be considered as tolling the running of the statute of limitations. Although the petition was filed in the original action and the judgment of the court in that action is relied upon and it is sought to enforce that judgment by the creation of an equitable lien, we think that such procedure cannot be considered simply a continuation of the original action or a species of execution or judgment enforcement that would continue to be available so long as the money judgment was enforceable. The right to have a lien declared against the real property had its origin in the right to have purchase money refunded and would give rise to the remedy of an equitable foreclosure upon the establishment of the lien. Had plaintiffs so chosen, they could have invoked this right and been granted the equitable remedy and the machinery for its enforcement all in the original action. Having failed to do this, but contenting themselves with securing a money judgment and a rescission of the contract, we are of the opinion that the filing of their petition constituted the commencement of another and separate cause of action, for a new and different relief, even though they were permitted by the trial court to file it and have it heard under the title of the original action. The proceedings commenced by plaintiffs must be considered a suit to establish a personal judgment previously obtained as an equitable lien upon the property involved. And this basic characteristic cannot be defeated by the simple expedient of proceeding under the title of the original action in connection with a supplemental proceeding. Such an action is a separate and distinct cause of action which does not relate back to the commencement of the original action so as to toll the running of the statute of limitations and such action is subject to the defense of that statute. 2 Wood on Limitations, § 298 (1) ; *Lang* v. *Choctaw, O. & G. R. Co.* (C. C. A.) 198 F. 38. In view of what has been said, it must follow that section 104-2-30, R. S. 1933, applies to plaintiffs' claim to an equitable lien; that, since plaintiffs did not commence any proceeding to establish said claim until more than four years

after the right of action in regard thereto arose, the same is barred.

Since the lower court ordered execution to issue only against defendant Minnie B. Cleverly's interest in the property involved, and dismissed plaintiffs' petition against the other defendant, J. W. Cleverly, upon the theory that his discharge in bankruptcy discharged not only plaintiffs' judgment debt but plaintiffs' judgment lien as well, it becomes necessary to review the trial court's action in that regard. The decree awarding plaintiffs a judgment on their original complaint was filed March 18, 1932. It does not appear from the record before us when that judgment was docketed. We shall assume for the purpose of our discussion of the question now under consideration that it was docketed immediately thereafter as is required by section 104-30-15, R. S. 1933. The significance of the date of docketing the judgment will appear as we proceed. It appears from the certificate of the clerk of the United States District Court, on file in the record before us, that on September 16, 1932, defendant J. W. Cleverly filed his petition and schedules in bankruptcy and on the same date he was adjudicated a bankrupt. It thus appears that the plaintiffs' judgment was obtained and became effective more than four months prior to the filing of the schedules and petition and the adjudication of bankruptcy.

It further appears from said certificate of the clerk of the federal court that said defendant listed plaintiffs' judgment in his schedules as one of his debts and that an order discharging him from all provable debts was made by the court on September 23, 1933. Section 63 of the Bankruptcy Act (11 U. S. C. A. § 103) provides that the debtor shall be discharged from all "provable debts." A judgment such as was obtained by plaintiffs is a debt provable in bankruptcy. 6 Am. Jur. 573, § 104. The discharge in bankruptcy obtained by defendant J. W. Cleverly would discharge said defendant from all personal liability on account of said judgment. But the trial court further held, in effect at least, that the dis-

charge in bankruptcy not only discharged and annulled the judgment debt, but also discharged and annulled any judgment lien which plaintiffs may have acquired by virtue of the judgment and the lien thereby created under section 104-30-15, R. S. 1933. That section provides that, "from the time the judgment is docketed it becomes a lien upon all the real property of the judgment debtor, not exempt from execution, in the county in which the judgment is entered, owned by him at the time or by him thereafter acquired during the existence of said lien."

Leaving aside for the moment the question as to whether the property here involved was or could be claimed as exempt and thus be immune from the imposition of a judgment lien, can it be said that the judgment lien given by force of the statute just quoted was discharged and canceled as to defendant J. W. Cleverly by his discharge in bankruptcy? Section 67f of the Bankruptcy Act (11 U. S. C. A. § 107 (f) by its language annuls "all levies, judgments, attachments, or other liens, obtained by legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him." This clause applies to voluntary bankruptcies as well as to involuntary. 4 Remington on Bankruptcy, § 1896. As a general rule, and except in cases where section 67f applies, the discharge in bankruptcy does not affect an existing valid lien and only releases the debtor's personal liability. Collier on Bankruptcy (12th Ed.) p. 402; *Olsen* v. *Nelson,* 125 Minn. 286, 146 N. W. 1097. While the judgment lien given by our statute is not specific in the sense that it applies to certain particular property, but applies generally to all real property of the judgment debtor not exempt from execution, the lien thus given has a definite existence, identity, scope, and purpose. It has, within its sphere, as much life and effect as a lien created by contract. It comes into being by operation of law and the time when it comes into existence so that it attaches as a lien is to be determined by the statute creating such lien. Collier on Bankruptcy, p. 1084; *Gregory Co.* v. *Cale,*

115 Minn. 508, 133 N. W. 75, 37 L. R. A. (N. S.) 156. In so far as the Bankruptcy Act is concerned, a judgment lien arising through a judgment obtained and docketed more than four months prior to the filing of a petition in bankruptcy stands unaffected by a discharge in bankruptcy within the general rule above stated. Collier on Bankruptcy, pp. 402, 403; *Olsen* v. *Nelson,* supra; *Gregory Co.* v. *Cale,* supra; *John Leslie Paper Co.* v. *Wheeler,* 23 N. D. 477, 137 N. W. 412, 42 L. R. A. (N. S.) 292; *McBride* v. *Gibbs,* 148 Ga. 380, 96 S. E. 1004; *McLendon* v. *Bonner,* 164 Ga. 869, 139 S. E. 799; *Johnson* v. *Turnholt,* 199 Iowa, 1331, 203 N. W. 715, 716; *Kramer* v. *Hofmann,* 218 Iowa, 1269, 257 N. W. 361; *Oilfields Syndicate* v. *American Improvement Co.* (C. C. A.) 260 F. 905. In the last-cited case it was held that a judgment lien was sufficient to classify its holder as a secured creditor where there was property of the bankrupt to which it has attached. If defendant J. W. Cleverly owned real property in Davis county at the time plaintiffs obtained their judgment against him and such property was not exempt from execution, then the plaintiffs acquired a judgment lien against such real property, which lien arose at the time the judgment was docketed. Under the authorities cited such lien was not affected by his discharge.

That said defendant then owned the real property involved in this action is an admitted fact. The trial court in its findings of fact found that plaintiffs' "judgment is a provable debt and therefore was discharged in bankruptcy and the interest of J. W. Cleverly in the property involved herein is not subject to execution on this judgment." Without commenting on the form of such finding as to whether it amounts, in the main, to a legal conclusion, it is apparent from the authorities heretofore cited that such finding or conclusion is erroneous to the extent that it finds the judgment lien is discharged, leaving out of consideration the question whether such property was exempt. Whether it was exempt, therefore, becomes a very important consideration in the final determination of the matter. The court made

no finding with respect to this phase of the case except to find there was no evidence to support the claim of defendants that Minnie B. Cleverly had a homestead interest in said property.

Obviously, if title to said property was in J. W. Cleverly and he claimed it as a homestead, the defendant Minnie B. Cleverly could do nothing more than join in such claim. It seems apparent to us that the trial court and the parties, having assumed that the discharge in bankruptcy of J. W. Cleverly destroyed plaintiffs' judgment lien against his property, failed to consider or offer proof upon the question of whether the property involved, being in the name of J. W. Cleverly, was exempt from execution. If it was exempt, then no judgment lien attached and no execution should issue against it. But whether it was exempt should have been determined, for, unless it is exempt, the judgment lien attaches and is not destroyed by the discharge in bankruptcy. In this respect the trial court failed to determine one of the material issues before it. There is no evidence in the record as it now stands from which we could settle the question of exemption, even though the proceedings here before us may be considered to be equitable and thus permit of our making findings.

In view of the state of the record before us and the unsatisfactory manner in which this phase of the case was presented and disposed of, we feel that it should be remanded to the trial court for further proceeding, rather than for us to attempt to now make final disposition thereof. The trial court should permit the parties to present such evidence as they may have pertinent to the determination of the question whether defendant J. W. Cleverly is entitled to claim as exempt the property here involved. If found to be exempt, then no execution can issue against the same; but, if found not to be exempt, then plaintiffs are entitled to proceed to enforce the lien of their judgment against the same.

In what we have said we have assumed that the scheduling of plaintiffs' judgment debt and the discharge of defendant J. W. Cleverly therefrom were sufficiently proved by the

certificate of the clerk of the United States District Court, contained in the files introduced in evidence. The files, including this certificate, were introduced in evidence by stipulation and were received and considered as evidence by the court. No objection was made by plaintiffs at the trial as to the sufficiency of such certificate to prove the matters shown by it and no claim has been made here by plaintiffs questioning its sufficiency in that regard. Under such circumstances we have not deemed it necessary to pass upon that question. We make this statement so that it may not be contended in some other case where the question may be raised that such kind of proof is competent or sufficient in the face of objection thereto. This question is discussed in 6 Am. Jur. 828, § 525, and note to Ann. Cas. 1914A. 1104. Section 104-47-10, R. S. 1933, should also be referred to.

The cause is remanded to the district court of Davis county for further proceedings in harmony with the views expressed herein. Neither party to recover costs.

FOLLAND, C. J., and MOFFAT and LARSON, JJ., concur.

WOLFE, Justice (concurring).

I have doubt whether the plaintiffs could bring a separate action to impress the property which they formerly purchased from the Cleverlys with an equitable lien after they obtained a judgment rescinding the contract and for the moneys paid in, on the theory that all matters which could have reasonably been litigated in that action and all remedies which equity could have given should have been litigated and granted in that action. But, since the opinion solves that matter on the statute of limitations, I am content to leave the above question undecided.

As to the question of whether a discharge in bankruptcy of a provable debt secured by a judgment lien discharges the lien, it appears that the cases hold there is no such discharge, at least where the secured creditor did not file his claim and participate in dividends. However, I cannot conceive of a

lien without a debt. The very idea of a lien is that the creditor shall have recourse to the property on which he claims a lien for the collection of his debt. If the debt is gone, the lien is gone. But the debt is not wiped out. A discharge in bankruptcy discharges the bankrupt from the debt, thus eliminating only the personal obligation. But the debt subsists for the purposes of recourse to property on which there is a lien for it and for purposes of a basis for a consideration if there is a new promise to pay it.

I assume that the prevailing opinion by inference or otherwise does not touch on the question of whether an order in bankruptcy setting aside property as exempt is re adjudicata as to lien claimants whose liens are only on such property.