**DASTRUP et al. v. SMUIN et al.**

No. 3961.

United States Court of Appeals
Tenth Circuit.

Feb. 3, 1950.

E. L. Schoenhals, Salt Lake City, Utah, for appellants.

Dwight L. King, Salt Lake City, Utah, (Ray E. Dillman, Roosevelt, Utah, Calvin W. Rawlings, Harold E. Wallace, Parnell Black, and Brigham E. Roberts, Salt Lake City, Utah, on the brief), for appellees.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

The appellees sued appellants for the sum of $3,300 as the sum paid under a uniform real estate contract, by the terms of which appellants agreed to sell appellees certain land in the State of Utah for the total sum of $7,500, $3,300 of which was paid by the transfer of an equity in a house and lot in Salt Lake City, Utah. The case was removed to the federal court on diversity of citizenship and requisite amount in controversy, both of which appear on the uncontroverted face of the petition for removal. The jury returned a verdict for the sum of $2,500 against the vendor appellants, and also found against the appellants on a counterclaim for $185.52. The trial court, however, set aside the verdict on the counterclaim, and allowed the same as a setoff against the jury verdict of $2,500, resulting in a judgment of $2,314.48, from which this appeal is taken.

In addition to the down payment, the sales contract dated May 1, 1946, provided that the vendors would receive one-half of the landlord's share of the hay and grain raised on the premises in 1946, under a pre-existing agricultural lease with a third party. It further provided for the payment of $500, plus 5% interest, on the 15th day of November, 1947, and $500, plus interest, on the 15th day of November of each year thereafter, until the full purchase price was paid. The seller was given an option to execute and maintain a loan secured by a mortgage upon the property of not to exceed the balance due on the purchase price, bearing interest at the rate of not to exceed 5%. When the amount owing the seller was reduced to the amount of such loan and mortgage, the seller agreed to convey to

the buyer title to the property, subject to the loan and mortgage. In the event of the failure of the buyer to comply with the terms of the contract, or upon failure to make any payments when due, the seller was, at his option, released from all obligations either in law or equity to convey the property, and all payments heretofore made on the contract were to be forfeited to the seller as liquidated damages for nonperformance, and the buyer agreed that the seller might, at his option, re-enter and take possession of the premises without legal process, together with all improvements and additions made by the buyer thereon. Upon receipt of the purchase price as provided in the contract, the seller agreed to execute and deliver to the buyer, or his assigns, a good and sufficient warranty deed conveying the title to the premises, free and clear of all encumbrances; and to furnish at his expense an abstract of title, brought to date at the time of sale, or at time of delivery of the deed, at the option of the buyer.

There was evidence to the effect that when the contract was signed, the vendees asked to see the abstract, and were told that it was at the courthouse being brought up to date, and it would be brought over for examination as soon as it was completed; and that after going into possession, the vendees wrote to the vendors concerning the abstract two or three times during the summer of 1946. The crop for 1946 amounted to 150 bushels of grain and 3 tons of hay. The vendors declined to accept their share, stating that the vendees might keep it. There was also evidence that the vendees told the vendors they did not want to make the payment due November 15, 1947, until they had examined the abstract, and were then told that it was in the Heber Bank and could be examined there. On November 4, 1947, the vendees wrote the vendors, stating that they would try to make the November 15th payment thirty days after it was due.

When the vendees went to the Heber Bank on or about November 10, 1947, and the abstract was made available to them, the banker called their attention to an entry reciting a mortgage dated December 10, 1946, on the property from the vendors to the Bank, in the sum of $6,000, due one year after date, with interest at 6% per annum, payable semi-annually. The abstract was then taken to an attorney for examination and "report", which the vendees received about November 18, 1947. The abstract also reflected a ten year oil and gas lease from the vendors to the Carter Oil Company, dated August 28, 1945, covering the premises.

When the vendors called upon the vendees at their home to demand payment of the installment due on November 15, the vendees told them that they "didn't feel like making the payment on the place as long as that mortgage was on it * * *", and that according to their lawyer's report, the abstract furnished did not include 40 acres of the 80 acres covered in the sales contract. The vendors returned to the home of the vendees on or about December 18, 1947, again demanding payment of the November 15th installment, stating that they could not pay off the mortgage until they received the payment under the contract. When the payment was not made, the vendors served written notice of cancellation of the contract of sale upon the vendees, giving five days in which to surrender the premises.

The vendees finally surrendered possession of the premises on or about April 10, 1948, and in the following December brought this suit, complaining of the mortgage to the Bank in excess of the amount due under the contract, bearing interest also in excess of the agreed rate; the existence of the ten year oil and gas lease on the property dated August 28, 1945; and the termination of the contract on December 20, 1947, thus entitling the vendees to recover as damages the $3,300 paid under the contract.

[1] It is undisputed that at the time the contract was terminated by the vendors, the vendees had paid nothing on it, and being in default, they cannot have rescission unless the vendors were themselves in default, or unable to perform the conditions in the contract. Especially since the contract by its terms provided that the vendors might re-

tain the amount paid on the purchase price as liquidated damages. See cases collected 134 A.L.R. 1064. If, however, the vendors terminated the contract without right or cause, the vendees could rescind and recover the amount paid on the contract. Brown v. Cleverly, 93 Utah 54, 70 P.2d 881; McBride v. Stewart, 68 Utah 12, 249 P. 114, 48 A.L.R. 267; Tremonton Inv. Co. v. Horne, 59 Utah 156, 202 P. 547. We have recently held, construing Oklahoma law, that one in default of strict compliance of a contract cannot declare it terminated and retain the payments made under its provisions as liquidated damages. Peter Fox Brewing Co. v. Collins, 10 Cir., 1949, 177 F.2d 1008. See also Robberson Steel Co. v. Harrell, 10 Cir., 177 F.2d 12.

The trial court refused to instruct the jury that the vendees were not entitled to a free and clear title to the property until the date called for the delivery of the deed, which would have been in 1955. And, it refused to instruct the jury that the vendees were required to tender back the property and all benefits received, together with a reasonable value for the use of the property as a condition precedent to rescission. Instead, the jury was permitted to decide whether the mortgage on the premises in excess of the amount due under the contract constituted such a breach as to entitle the vendees to rescind and recover the purchase price. In that connection, they were told to consider whether at any time before the surrender of the property in 1948, the vendees really in fact ever intended or had the ability to make the payments under the contract, or whether they failed to make the same because of the claimed defects. That is to say, whether the failure to make the payments was in good faith or simply an excuse for delay and nonpayment.

The jury was further told that if the parties abandoned the property because they did not have the money, and did not intend to make the payments, they were not entitled to damages by way of rescission or otherwise against the vendors; but if they acted in good faith in reliance upon the claimed defects, the jury could consider that fact in determining whether or not they made tender at any time before or since the termination of the contract by the vendors. With respect to the oil and gas lease, the jury was instructed that they should consider whether its existence caused the vendees any damage. They were told in effect that if it caused no actual damage, its mere existence was no excuse for non-payment, and in determining whether they had suffered any damages, the jury could take into consideration whether there was any likelihood that any oil or gas would be produced under the lease which might cause damage to the surface of the property.

█ This, we think, fairly stated the law applicable to the case. If, as the jury found, the vendees acted in good faith, we cannot say as a matter of law that they forfeited the down payment under the contract by refusing to pay the November 15th installment in the face of a mortgage on the property in excess of the amount due on the contract, payable within thirty days after the installment was due. It is suggested that in any event, the $6,000 mortgage covered other property, including the house and lot in Salt Lake City, agreed to be worth the amount of the down payment, and that it therefore did not amount to a breach of the covenant against excessive encumbrances. But the mortgage did cover the property, and it was security for the payment of the entire $6,000. In default of its payment on December 10, 1947, the mortgaged property was subject to the satisfaction of the entire mortgage debt. In this posture of the case, we are unable to say that the vendors were legally entitled to cancel the contract and claim a forfeiture.

It is true, as the appellants suggest, that they are entitled to an adjustment for the use of the property during the vendees' possession, and that such issue should have also been submitted to the jury. But the verdict being $800.00 less than the amount of the purchase price paid, we think it fair to assume that the jury gave appropriate consideration to that item.

On the whole record, we are satisfied that the judgment is in accord with law and supported by the evidence and it is affirmed.