Richard F. McKEAN, Plaintiff
and Appellee,

v.

Michael W. McBRIDE; Alpine Ltd.; and Fidelity National Title Insurance Co.; Geodyne II; Dan C. Simons; and Arden J. Bodell, Defendants and Appellants.

No. 920705–CA.

Court of Appeals of Utah.

Nov. 10, 1994.

R. Stephen Marshall, Salt Lake City, for appellants.

Ralph R. Tate, Jr., Salt Lake City, for appellee.

Before BENCH, DAVIS and ORME, JJ.

## OPINION

DAVIS, Judge:

Defendants Michael W. McBride, Alpine Ltd., Geodyne II, Dan O. Simons, and Arden J. Bodell (collectively referred to as Defendants)[1] appeal from a judgment entered against them and in favor of appellee Richard F. McKean. We reverse.

## FACTS

On June 1, 1978, the New Empire Group[2] (Empire) as buyer entered into a written contract (the Alpine contract) with McBride as seller for the purchase of approximately 4,400 acres of land located on Traverse Mountain (the property) in Utah. McBride subsequently transferred his interest under the Alpine contract to Alpine Ltd. (Alpine). Paragraph 2.6 of the Alpine contract provided that Alpine would release to Empire designated land valued at sixty-six and two-thirds percent of the principal payments made by Empire under the contract.

On or about June 7, 1979, McKean as buyer entered into an Earnest Money Receipt and Offer to Purchase (Offer to Purchase) with Empire as seller, proposing to purchase the property. Although the Offer to Purchase was subsequently amended, the transaction was never completed. Even so, on June 25, 1979, McKean made a $330,000 payment directly to Alpine on behalf of Empire and pursuant to the Alpine contract. McKean demanded that Alpine release a portion of the property (apparently valued at $220,000) pursuant to paragraph 2.6 of the Alpine contract. Alpine never complied with this demand, nor did it return McKean's money. Because of Alpine's failure to release the property, Empire ultimately served a "notice of default" upon Alpine on July 3, 1980.

On September 20, 1980, New Empire Development Company, Cook, Lamoreaux, and Hansen as sellers executed a Uniform Real Estate Contract (UREC) to transfer all of their interest in the property under the Alpine contract to Child. Child agreed to pay Cook, Lamoreaux, and Hansen $500,000 each within eighteen months. The UREC was placed into escrow.

On February 25, 1982, Child filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Utah, and the order for relief was entered the same day. In his bankruptcy schedules, Child listed the property as an asset of the bankruptcy estate, subject to the liens in favor of Alpine, Cook, Lamoreaux, and Hansen. On September 29, 1983, the bankruptcy court confirmed Child's Third Amended Plan of Reorganization (Plan), which provided that Child, as debtor-in-possession, would sell the property by July 25, 1984. If Child was unable to sell the property by this date, the Plan provided that

> the Plan and all acceptances of the Plan and assumptions pursuant to the Plan shall be void and of no force or effect (except ... Debtor shall automatically forfeit any right Debtor might otherwise have to require the conveyance to or for the benefit of Debtor of acreage pursuant to the partial release provision of paragraph 2.6 of the Alpine Contract), a trustee shall forthwith be appointed by the Court and the Estate shall be liquidated under chapter 7 of the Bankruptcy Code....

On April 4, 1984, McKean filed a motion with the bankruptcy court to include him as an unsecured creditor in Child's bankruptcy proceedings.

Child failed to sell the property by the required date and, pursuant to the Plan, a trustee was appointed.[3] The trustee sold the property on February 28, 1985, free and

---

1. Defendants Simons, McBride, and Bodell are general partners of Geodyne II, which is the sole general partner of Alpine Ltd.; McKean's claim against Fidelity National Title Insurance Co. was dismissed with prejudice at an earlier stage of this lawsuit.

2. The New Empire Group includes Myron B. Child, Jr., Ronald S. Cook, Ray W. Lamoreaux, Wendell P. Hansen, and New Empire Development Company.

3. The proceedings were also converted to proceedings under Chapter 7 and, on motion, reconverted to proceedings under Chapter 11.

clear of all liens, encumbrances, and interests.[4] The sale was confirmed by the bankruptcy court on March 19, 1985. At no time did anyone seek to enforce the provisions of paragraph 2.6 of the Alpine contract, object to the terms of the Plan, object to the sale of the property, or seek a return of the monies paid by McKean to Alpine on behalf of Empire.

 On June 12, 1985, after the sale of the property and while Child was still in bankruptcy, Child, Cook, Lamoreaux, Hansen, and New Empire Development executed an assignment (Assignment) in favor of McKean, assigning him their interest in the Alpine contract and their right to "any refund, damages or payments which may be due and owing as a result of the failure and refusal of Alpine Ltd. to release said property or refund said payment."[5] McKean subsequently filed this lawsuit against Defendants, seeking damages in the amount of his $330,000 payment to Alpine, plus interest, attorney fees, and costs. The trial court ruled in favor of McKean and entered a judgment against Defendants in the amount of $265,689.76, which represented damages in the amount of $330,000, less $110,000 as defendants' right to set-off (presumably the one-third Alpine was not required to convey

under the Alpine contract), plus interest from June 25, 1979.[6]

Defendants appeal, claiming the trial court's ruling was in error.

## ANALYSIS

Defendants raise numerous issues on appeal. However, because we conclude that the statute of limitations bars McKean's claim, we do not reach the other issues raised.[7]

 Defendants argue that the trial court erred in concluding that McKean's claim is not barred by the four-year statute of limitations. The essence of Defendants' argument is that McKean's claim for relief is not grounded upon a written contract and, therefore, is governed by the four-year statute of limitations pursuant to Utah Code Ann. § 78–12–25(1) (1992). Defendants urge that McKean's claim is time-barred because he did not file his lawsuit within the requisite time period. The trial court disagreed, concluding that McKean's claim was timely filed because it was subject to the six-year statute of limitations period pursuant to Utah Code Ann. § 78–12–23(2) (1992). Implicit in the court's conclusion is the determination that McKean's claim is based on a written contract. Whether the trial court erred in ap-

---

4. McKean was present at the trustee's sale.

5. Child was not authorized to make this assignment. " 'The filing of the bankruptcy petition has the effect of divesting the debtor of "all legal and equitable interests" he [or she] possesses in property at the time of filing, 11 U.S.C. § 541(a)(1), and vests those interests in' a bankruptcy estate." *In re Robison,* 74 B.R. 646, 647 (E.D.Mo.1987) (citing *Commercial Credit Business Loans, Inc. v. Northbrook Lumber Co.,* 22 B.R. 992, 995 (N.D.Ill.1982)). If a trustee has been appointed, the debtor is required to surrender all property of the bankruptcy estate to the trustee. 11 U.S.C.A. § 521(4) (1993). Thus, the debtor loses the legal ability to dispose of property of the estate and cannot enter into a postpetition agreement which assigns the estate's assets. *See Pride Exploration v. Marshall Exploration,* 798 F.2d 864, 866 n. 2 (5th Cir.1986) (trustee-in-bankruptcy was proper party to transfer debtor's interest in lease); *cf. Motor Carrier Audit & Collection Co. v. Lighting Prods., Inc.,* 113 B.R. 424, 426 (N.D.Ill.1989) (debtor no longer has authority to assign assets upon commencement of Chapter 7 proceedings).

Although Child had no authority to make the assignment during the pendency of the bankrupt-

cy proceedings because a trustee had been appointed, such transfers appear to be voidable, rather than void, and no action was taken to set aside the assignment. *See* 11 U.S.C.A. § 549(a) (1993); *In re Masters,* 137 B.R. 254, 258 (Bankr. S.D.Ohio 1992); *In re James B. Downing & Co.,* 74 B.R. 906, 909 (Bankr.N.D.Ill.1987). *But see In re Silver Wheel Freightlines, Inc.,* 64 B.R. 563, 565 (Bankr.D.Or.1986) (postpetition lease and settlement agreement void pursuant to 11 U.S.C. § 549(a) because transaction was unauthorized and out of the ordinary course of business).

6. The parties subsequently settled, and a satisfaction of judgment was filed with the lower court. Pursuant to the parties' settlement agreement, however, the defendants reserved their right to appeal McKean's judgment. Thus, they have not waived their right to appeal. *See West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1316 (Utah App.1991) (partial satisfaction of judgment filed, but parties stipulated to reservation of right to appeal).

7. Lack of consideration, res judicata, and set off.

plying the six-year limitations period is a question of law. "We accord conclusions of law no particular deference, but review them for correctness." *Scharf v. BMG Corp.,* 700 P.2d 1068, 1070 (Utah 1985).

 The limitation period applicable to this case is dependent upon the nature of McKean's claim. An action upon a contract, obligation, or liability not established by a written agreement must be commenced within four years after the date on which the cause of action arises. Utah Code Ann. § 78–12–25(1) (1992); *see also Davidson Lumber v. Bonneville Inv.,* 794 P.2d 11, 19 (Utah 1990) (implied in law contract falls within § 78–12–25(1)); *Petty & Riddle v. Lunt,* 104 Utah 130, 138 P.2d 648, 650 (1942) (same; dealing with predecessor statute) (cited with approval in *CIG Exploration, Inc. v. Hill,* 824 F.Supp. 1532, 1546–47 (D.Utah 1993)); *Brown v. Cleverly,* 93 Utah 54, 70 P.2d 881, 885 (1937) (same) (cited with approval in *Petty & Riddle,* 138 P.2d at 650). An action founded upon a written instrument must be brought within six years. Utah Code Ann. § 78–12–23(2) (1992). The statute of limitations begins to run at the time a cause of action arises. *Davidson Lumber,* 794 P.2d at 19. "A . . . cause of action arises when it becomes remediable in the courts." *Id.* Thus, the statute of limitations in this case began to run when Empire's right (or McKean's right, if any) to bring a claim against Alpine arose.

 The June 25, 1979 payment made by McKean on behalf of Empire was timely and, therefore, Empire was entitled to a partial release of property under paragraph 2.6 of the Alpine contract at the time the payment was made. When Alpine refused to release the property,[8] Empire had the right to enforce its legal rights against Alpine. McKean was cognizant of this right, having made demand upon Alpine directly for the release of the property more or less contemporaneously with the payment. Following additional demands, Empire formally declared Alpine in default on or about July 3, 1980. Thus, the cause of action arose when Alpine failed to release the property pursuant to para-

graph 2.6 of the Alpine contract, and the statute of limitations began to run at the latest by July 3, 1980.

In determining the applicable statute of limitations, we refer to *Brown,* which, as defendants correctly note, is analogous to the case at hand. In *Brown,* the Browns and the Cleverlys entered into a written contract where the Cleverlys sold to the Browns certain real estate, livestock, and other items. A few years after the Browns gained possession, the Cleverlys repossessed the land, claiming that the Browns were in default. The Browns subsequently brought suit against the Cleverlys, alleging wrongful repossession and seeking rescission of the contract and a return of the monies paid under the contract as damages. *Brown,* 70 P.2d at 882. An issue arose as to whether the four- or six-year statute of limitations applied. As in this case, if the Browns' right to recover was founded upon a written agreement, then the six-year statute of limitations would apply; if the Browns' rights were not established by a written instrument, the four-year limitations period applied. *Id.* at 885.

The contract in *Brown* did not contain any express provisions giving the Browns the right to recover the money paid by them on the contract in the event of the Cleverlys' default. Because of this deficiency, the court found that the Browns' right to recover did not rest upon the written agreement between the parties,

> but upon an implied promise, created by law, of defendants to repay the purchase money paid if they should default in the performance of the contract. *The action could not be based upon the written contract, for it contained no promise by defendants to return the purchase price.* While it is true that the payments were made under the written contract and the relations of the parties were to that extent affected by the writing, yet that instrument is not declared on in the action to recover the payments made as the basis of the right to recover. It is only an incident to the accrual of the right to recover. *The basis for a recovery rests in the implied promise of defendants to return the purchase money which the law creates from*

─────

8. The trial court found that Alpine wrongly refused to release the property in question. This determination has not been challenged on appeal.

*their duty to return it upon failure by them to perform the contract and give plaintiffs what they contracted for.* The action rests in implied assumpsit as for money had and received.

*Id.* (emphasis added); *see also Petty & Riddle,* 138 P.2d at 650. Therefore, the court in *Brown* found that the four-year statute of limitations applied as opposed to the six-year limitations period governing actions founded on written instruments.

In the case at bar, the Alpine contract provides no remedy in the event of Alpine's default or refusal to perform. Thus, McKean's right,[9] if any, to recover the monies paid does not rest on the Alpine contract, but is implied in law. Because McKean's claims are not founded upon a written instrument, but rather upon an implied right to recover, the four-year statute of limitations period applies. As the cause of action arose on or before July 3, 1980, and the complaint was not filed until June 25, 1985, McKean's claim is time-barred and the trial court erred in concluding that McKean's claim fell within the six-year statute of limitations period.

McKean argues that Child's bankruptcy tolled the statute of limitations; the trial court agreed, stating in its conclusions of law that "the parties' ability to convey land was stayed by the bankruptcy proceedings of Myron Child." While this may be true with respect to Child's interest in the property, McKean's lawsuit does not seek conveyance of the property, but a return of the $330,000 payment.[10] Assuming Child's bankruptcy es-

tate owned whatever claims the Empire group had against Alpine by reason of the September 20, 1980 UREC, the Bankruptcy Code provides that Child's claim against Alpine will be tolled for the later of two years after the order for relief is entered or the running of the applicable limitations period. 11 U.S.C.A. § 108(a) (1993). The order for relief was entered on February 25, 1982. Therefore, to the extent that Child had rights against Alpine, his bankruptcy tolled the statute of limitations until February 25, 1984, if the cause of action accrued on or about June 25, 1979, or until July 3, 1984 if the cause of action accrued on July 3, 1980. Child had until this time to seek rescission and reimbursement of the money paid on Empire's behalf by McKean.[11] In addition, the parties acquiesced in the Plan's termination of any claim against Alpine for the conveyance of any of the property and the sale of the property by the trustee, and no attempt was made to enforce the terms of the Alpine contract against Alpine.[12]

We hold that McKean's claims against Defendants are governed by the four-year statute of limitations, which had expired by the time this lawsuit was filed. The judgment entered in favor of McKean is therefore reversed.

BENCH and ORME, JJ., concur.

---

9. Although we portray the right as McKean's, it is actually Empire's right which has been assigned to McKean.

10. We agree that an action for specific performance under the Alpine contract would fall with the six-year statute of limitations. However, one case may have two applicable statutes of limitations because of two separate claims. *See, e.g., Holm v. B & M Serv., Inc.,* 661 P.2d 951, 953 (Utah 1983). Moreover, this case is not and could not be based on specific performance. All parties agree that the right to a conveyance of the property was extinguished either by the Plan or by the trustee's sale. The trial court's conclusion that the bankruptcy sale did not extinguish Alpine's legal obligation to convey the land is in error.

11. McKean avers that he has a direct claim against Alpine as a result of the $330,000 payment. In response to Defendants' assertion that

this claim was raised for the first time on appeal, McKean concedes that in the trial court, the claim was asserted only in the form of his general prayer for relief. Even if McKean's claim had merit and was not barred by the statute of limitations, we conclude that it was raised for the first time on appeal and decline to address it. *See Progressive Acquisition, Inc. v. Lytle,* 806 P.2d 239, 242 (Utah App.1991) (" 'It is axiomatic that matters not presented to the trial court may not be raised for the first time on appeal.' ") (quoting *Franklin Fin. v. New Empire Dev. Co.,* 659 P.2d 1040, 1044 (Utah 1983)).

12. Of course, any other claim McKean or other members of the Empire Group had against Alpine could have been asserted anytime after June 25, 1979, or, at the latest, after July 3, 1980, notwithstanding Child's bankruptcy.