[Civ. No. 3253.   Fourth Dist.   Feb. 15, 1944.]

S. W. LEMON et al., Appellants, v. HORACE S. HAN-
COCK, Respondent.

Drumm & Drumm, E. O. Leake and J. J. Leake for Appellants.

Blodgett & Tobias and Joseph O. Morris for Respondent.

BARNARD, P. J.—This is an action to quiet title to a power shovel. On June 4, 1941, the Northwest Engineering Company sold this shovel on conditional sales contract to the Caledonia Operating Company, a limited partnership, of which Roger E. Jones was the general partner. This contract provided that the vendor might at its option take possession of the shovel on default of any payment but did not provide that time was of the essence thereof.

On December 10, 1941, the Caledonia Operating Company transferred its interest in the shovel by bill of sale to the defendant Hancock, as trustee. This was done pursuant to a written agreement between Roger E. Jones and Hancock and two other parties, which provided in general that Hancock was to advance $5,000 to enable a mining operation to be continued, that certain obligations were to be paid and that a corporation was to be later formed in which Jones would have a half interest, Hancock a one-fourth interest and the other parties a one-fourth interest. Hancock advanced $6,000, of which $1,100 was used to pay off a chattel mortgage on the vendee's interest in the shovel, a considerable amount was used to pay past due payments and later payments on the contract price of the shovel, and the balance was used in paying expenses of the mining operations. The chattel mortgage was assigned to Hancock. The Northwest Engineering Company was notified that the vendee's interest in the contract had been assigned to Hancock and it accepted payments from him. The shovel remained on the mining property, the mine being operated by the new partnership including Hancock and Roger E. Jones, and Hancock paid all installments on the purchase price of the shovel except the final three payments of $315 each, which came due about the first of April, May and June, 1942, respectively.

Most of the payments on the shovel were made late and after repeated demands by the vendor, and at least some of them were made and accepted after the time when the vendor had stated that it would take possession of the shovel.

Finally, on June 15, 1942, the Northwest Engineering Company notified Hancock, Roger E. Jones and the Caledonia Operating Company that it had instructed its San Francisco office to repossess the shovel unless the past due notes were paid by June 20, 1942. On June 22, 1942, the vendor notified these parties that it would hold up action on the repossession until June 29.

On June 29, 1942, an attorney, in whose office the Caledonia Operating Company maintained its office, informed Roswell C. Jones that the mining company, Roger E. Jones and Hancock were unable to meet the last payments on the shovel. Roswell C. Jones is a brother of Roger E. Jones and is the husband of "G. I. Jones." On the same day this attorney wrote a letter to the Northwest Engineering Company stating that he was enclosing a check for the $1,005.79 then due on the shovel for the purpose of purchasing the contract and requested that the contract be assigned to "Mr. G. I. Jones," that a bill of sale be issued "to him," and that the assignment and bill of sale be sent to this attorney. The attorney signed this letter as attorney for the Caledonia Operating Company, Roger E. Jones and G. I. Jones.

On July 1, 1942, the Northwest Engineering Company executed an assignment of this contract to G. I. Jones subject "to the right of the conditional vendee to complete the contract in accordance with its terms." In its letter of July 1, 1942, transmitting that assignment, the original vendor stated that the assignment was sufficient without a bill of sale "especially in view of the fact that any bill of sale which we could issue would necessarily be subject to the rights of the assignee and the vendee under the contract."

On July 3, 1942, "G. I. Jones" sent a letter to the Caledonia Company, to Roger E. Jones and to Hancock, giving notice that it had purchased the Northwest Company's interest in the original contract of sale for this shovel, stating that the contract "is hereby canceled and terminated and all of your rights thereunder are canceled and terminated" and making demand for the immediate possession of the shovel. On July 15, 1942, G. I. Jones or Roger E. Jones

leased the shovel to another concern for a period of months and received $2,700 in advance rental which was used to pay certain debts and obligations which were apparently the debts of Roger E. Jones or the mining partnership, or both. On August 18, 1942, G. I. Jones gave a bill of sale for the shovel to Roswell C. Jones and on October 15, 1942, Roswell C. Jones gave a bill of sale for a one-third interest in the shovel to Stuart W. Lemon.

The plaintiffs then brought this action to quiet title to the shovel. The complaint alleged that the plaintiffs are the owners and entitled to the possession of the shovel and that the defendant claims some right or interest, which claim is wholly without right. The defendant answered denying all of the allegations of the complaint except that he admitted that he claimed some right or interest in the shovel. He also filed a cross-complaint against the plaintiffs setting forth that he held a bill of sale given him by the Caledonia Operating Company, a copy of which was attached, and alleging, in effect, that the plaintiffs and cross-defendants had conspired with Roger E. Jones and the attorney above mentioned to deprive him of his interest in the shovel, that by reason thereof the plaintiffs and cross-defendants were not entitled to any interest in the shovel or entitled to the possession thereof, and that he himself was the only one who had a legal interest therein.

The court found in favor of the defendant. While it made no finding of fraud in connection with the purchase of this contract by G. I. Jones it found most of the facts above set forth, and which appear in the evidence, and found that the plaintiffs and Roger E. Jones and G. I. Jones had full knowledge of all of these facts and knew that the defendant was the owner of the equitable title to said shovel under the contract of sale, and that the plaintiffs and G. I. Jones had expended no money and incurred no liability in connection with this transfer except the payment made to the Northwest Engineering Company. It was further found that the plaintiffs are the owners of the legal title to the shovel subject to the right of the defendant to complete the contract in accordance with its terms and the terms of the assignment to G. I. Jones, that the defendant was entitled to the possession of the shovel on the completion of the terms of the contract, that the defendant has at all times claimed to be the owner of the equitable title to the shovel subject

to the original contract of sale, and that the defendant is entitled to the possession of the shovel free of all claims of G. I. Jones and the plaintiffs except the payment of the said sum of $1,005.79, with interest from July 1, 1942. As conclusions of law it was found that the defendant's right to redeem under the original contract has not been terminated, that the defendant is entitled to redeem upon paying the above amount with interest within a reasonable time, that a period of ten days after the judgment herein becomes final is a reasonable time within which to make such payment, that upon payment of this amount within said time the defendant will be entitled to the shovel, and that if this amount is not paid within said time the plaintiffs will be entitled to a judgment quieting their title. Judgment was accordingly entered, with one exception hereafter noted, and the plaintiffs have appealed.

It is first contended that paragraph I of the findings of fact, in which it was found that the appellants are the owners of the legal title to this shovel subject to the right of the respondent to complete the contract in accordance with its terms, and paragraph XV of the findings in which it was found that the respondent has at all times claimed to be the owner of the equitable title to the shovel subject to the contract of sale, and that he is entitled to the possession thereof free of all claims except the payment otherwise provided for in the findings, are not within the issues presented by the pleadings. It is argued that the respondent thus claimed to be the full owner of the property and that through his pleadings he made no claim either to an equitable interest in the shovel or to any right of redemption under the original contract. By the complaint and the respondent's answer issues were raised as to whether the appellants were the full owners of the shovel and entitled to its possession and as to whether the respondent had any right, title or interest in and to the shovel in question. Whether or not the respondent proved everything he alleged in his cross-complaint the matters covered by the findings in question were clearly within the issues presented by the pleadings.

It is next contended that paragraphs I and XV of the findings are unsupported by any evidence and are inconsistent with other findings to the effect that certain payments were due under the original contract, that certain

notices were given and that the payments had not been made to G. I. Jones or to the appellants. The gist of appellants' contentions is that respondent lost all of his rights under the original contract when the final payments were not made on or before June 29, 1942, and that the court erred in finding and concluding that he had an equitable interest in the shovel and in giving him ten days after the judgment becomes final in which to pay the amount which the court found had been paid by Roswell C. Jones and G. I. Jones out of their community property for the assignment of the original contract. Incidentally, the respondent states that this amount was paid into court although we are pointed to no place where this appears in the record.

We are not convinced that this judgment could not be affirmed if the strict rules of law were to be applied. The appellants rely on the rule announced in *Martin Music Co.* v. *Robb*, 115 Cal.App. 414 [1 P.2d 1000], that the vendor under such a contract may either disaffirm the contract and retake the property or may affirm the contract declaring all payments due and sue for the purchase price. It is then argued that the contract was here disaffirmed, thereby putting an end to all of the vendee's rights; that the vendor had title and there was nothing that needed to be done in order to perfect its title; and that the Northwest Engineering Company had given notice of its intention to terminate the contract and was therefore free to treat the property as its own and to dispose of it as it saw fit. However, the Northwest Engineering Company did not disaffirm the contract or give any notice that it was terminated. On the contrary, it recognized the contract as still in force and assigned it to G. I. Jones. Even this assignment of the original contract was made subject "to the right of the conditional vendee to complete the contract in accordance with its terms," and in the letter transmitting this assignment the vendor declined to give the bill of sale which had been asked for stating that any bill of sale they might give would "necessarily be subject to the rights of the assignee and the vendee under the contract." All, or nearly all, of the payments had not been made at the time they were due. The Northwest Engineering Company had repeatedly given notice that the payments must be made by a certain date or they would enforce their rights under the contract. This was not done and the pay-

ments were later accepted. The matter was allowed to drift along until all the installments of the purchase price had become due. Under well established rules, when such a course of conduct is pursued a rather definite notice is required in order to work a forfeiture on the vendee. The final notice that the overdue payments must be made by June 29 is somewhat indefinite, stating that the vendor was instructing its San Francisco office to repossess the shovel if the payments were not made by that date. However, the San Francisco office took no steps to repossess the shovel immediately, or at all. A few days later the vendor recognized the continued existence of the contract by assigning it. No further notice was given except the notice given by G. I. Jones on July 3 that the contract was canceled and terminated. In view of the prior actions of the parties it could well be held that the respondent was entitled to a notice that the contract would be terminated and giving him an opportunity to pay the required payment before the specified date before the contract could be terminated and canceled since the vendor had not stood squarely upon its contract and taken possession when the payment was not made on June 29.

However, we are here confronted with a somewhat different situation. Regardless of what would otherwise have been the strict legal rights of the parties the appellants elected not to stand on those rights but to bring this action in equity to quiet their title to the property. In thus seeking the aid of equity they impliedly, at least, offer to do equity. The court could apply equitable principles and was not compelled to adhere to strict rules of law. The court then had a wide discretion in order to do justice between the parties. (*Veterans Welfare Board* v. *Burt,* 4 Cal.App.2d 659 [41 P. 2d 587].) The evidence here justifies the inference that Roger E. Jones engineered the transaction through which his brother and his brother's wife obtained an assignment from the original vendor and that this was done in order to deprive this respondent of any interest in the shovel although he had furnished most of the money and was a partner of Roger E. Jones in the mining operations. The entire situation was one in which a court, in exercising its equitable jurisdiction, would naturally feel that the interests of the respondent were real and substantial and that he had not been fairly dealt with. The condition imposed by the court that

the respondent should have the right to pay the amount due on the original contract, and which had been paid by or for the appellants, within ten days after judgment, and that if this amount was not paid title should be quieted in the appellants was reasonable, was in accordance with the equities of the parties and was well within the court's discretion in such a case.

While the court found that the respondent acquired an interest in the shovel through a bill of sale executed on December 10, 1941, to the respondent as trustee, and as a conclusion of law found that the respondent was entitled to complete the performance of the contract for the purchase of the shovel, as successor in interest to the Caledonia Operating Company and pursuant to the bill of sale which he thus received, the judgment provides that upon payment of the amount found to be due to the appellants, with interest, the "defendant will be entitled to the delivery of said property to him and to have his title thereto quieted." This part of the judgment should have been in favor of the defendant "as trustee" and the portion of the judgment just above quoted is modified by inserting those words therein so that the same shall read: "defendant, as trustee, will be entitled to the delivery of said property to him and to have his title thereto quieted." As so modified, the judgment is affirmed, the respondent to recover his costs on appeal.

Marks, J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 13, 1944.