## PETER FOX BREWING CO. et al. v. COLLINS.

### No. 3908.

United States Court of Appeals
Tenth Circuit.

Nov. 4, 1949.

Rehearing Denied Nov. 28, 1949.

Charles E. Dierker, Oklahoma City, Okl. (Harold L. Lipton, Chicago, Ill., with him on the brief), for appellants.

Robert O. Bailey, Oklahoma City, Okl. (Bruce McClelland, Louie G. Kneeland, Bruce McClelland, Jr., Leslie L. Conner, Oklahoma City, Okl., and Irvine E. Ungerman, Tulsa, Okl., with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action by appellee, C. G. Collins, against Peter Fox Brewing Company and Acme Distributing Company, two corporations, to recover $12,610.40, the balance of a deposit of $20,000.00, deposited pursuant to a contract for the purchase of beer. Judgment was entered for plaintiff and defendants have appealed.

On August 20, 1946, Acme entered into a contract with Collins to deliver specified quantities of beer weekly for a five-year period. Collins deposited $20,000.00 to guarantee performance on his part. On February 18, 1947, a new contract was executed between Acme as party of the first part, Collins as party of the second part, and Tulsa Beverage Company, as party of the third part. This contract abrogated the prior contract and provided for the conditions under which the $20,000.00 was to be returned to Collins. In the new contract, Collins agreed to cause the Tulsa Beverage

Company to purchase a minimum of two cars of beer monthly for a period of one year. With the exception of the first car, subsequent cars of beer were to be paid for by sight draft attached. The $20,000.00 was to be repaid as follows: A credit of $2500.00 was to be allowed against the first car of beer and the further sum of $5,000.00 was to be refunded when full payment was made by Tulsa Beverage Company for the first car. The balance of $12,500.00 was to be repaid to Collins in monthly payments of $1,000.00 each beginning on the last day of March, upon condition, however, that the Tulsa Beverage Company would accept delivery and pay for the minimum of two cars of beer during each thirty-day period of the contract. The contract provided that, if the Tulsa Beverage Company was adjudged a bankrupt or became insolvent or in the event of a breach by Collins or Tulsa Beverage Company of their obligations, Acme might at "its option forthwith declare this agreement at an end and may retain all money heretofore paid by party of the second part" as liquidated damages. Acme has been dissolved and it was stipulated that Peter Fox Brewing Company was responsible for any judgment obtained.

On February 18, 1947, Tulsa Beverage Company, by letter placed an order for beer with Acme. The pertinent portion of the letter is as follows:

"Pursuant to an agreement entered into on this date between Acme Distributing Company and C. G. Collins, we hereby place with you, in accordance with the terms and conditions of said agreement, an order for the quantities of Silver Fox DeLuxe Products as follows: Immediately upon the execution of this contract referred to herein, you are to cause to be shipped to us at Tulsa, Oklahoma, a carload of bottled products containing one-half ale and one-half of your Silver Fox DeLuxe Beer in pints. Thereafter, and on the 15th day of March, 1947, you will please ship one carload of the same type of merchandise and in the same quantities, and thereafter and on the 30th day of March and the 15th and 30th days of each and every month thereafter up to and including the 10th day of

February, 1948, you will please ship to us a split car containing the same type of merchandise."

Acme did not comply with the order or with its obligation, under the contract, to make delivery of beer in carload lots. Instead it shipped 600 cases February 21, 1947; 100 cases March 2, 1947; 350 cases March 5, 1947; and 100 cases April 5, 1947, a total of 1150 cases. A full carload of beer contains from 1300 to 1400 cases.

On March 14, 1947, Peter Fox Brewing Company advised Tulsa Beverage Company by letter that:

"In accordance with your letter of February 18, we are making shipment Monday, March 17, unless we hear from you to the contrary.

"This will go forward Monday, March 17, sight draft bill of lading attached."

Upon receipt of this letter, Tulsa Beverage Company wired Fox, as follows:

"Collins seriously ill Hold Shipment few days Letter following—"

On March 20, following, Irvine E. Ungerman, an attorney, wrote Milton Fox, of the Fox Brewing Company, a letter in which he referred to a previous telephone conversation between them and referred to Collins' illness and weather conditions making beer movement slow, and then stated:

"Under those circumstances I would suggest in an effort to keep this matter rolling along, and yet see to it that it is fair and equitable to all parties involved, that you hold up shipment on this car that was due to be shipped on the 15th, for an additional ten day period, and see if Collins cannot use it at that time, which he seems to be *confidant* that he can."

This letter was sent by Fox to Walter Stegmeir, its representative in Oklahoma City, Oklahoma, with the following notation on the bottom thereof:

"Walter Handle in 10 Days from March 20th or call Collins."

From this point on the evidence is in sharp conflict. Collins offered testimony that he became seriously ill shortly prior to March 14, 1947, and was confined to the

hospital or his home until the latter part of April, and was unable to attend to his business during that period of time; that on March 15, 1947, certain telephone conversations and correspondence took place between the parties to the contract, their attorneys and representatives, whereby it was agreed that shipment of beer would be withheld temporarily during Collins' illness and that the monthly refunds during such time should also be withheld by Acme and that pursuant to these arrangements and understanding no shipments or refunds were requested until after April 15, 1947; that during such time neither Fox nor Acme insisted upon Collins or Tulsa Beverage Company ordering beer in strict compliance with the contract and agreed to the extension of time, and led the Tulsa Beverage Company and Collins to believe until April 29, 1947, that it was "all right" to delay deliverance and acceptance of beer; that after April 15, and before April 29, while the extension agreement was in effect, Tulsa Beverage Company ordered the resumption of beer shipments by letter at the direction of Collins, and that Collins and Tulsa Beverage Company were then ready, able and willing to perform their part of the contract; that when no shipments were made pursuant to such orders, Collins went to Oklahoma City on April 29, and made a personal demand for the resumption of such shipments and was then advised that no further shipments would be made and that no further refunds of the deposit would be forthcoming.

█ Since the only question for us to determine is whether the findings of the court are supported by substantial evidence, the contrary evidence will not be set out.

The evidence outlined above is sufficient to sustain the findings of the trial court that Collins complied with the provisions of the contract by causing Tulsa Beverage Company to immediately place an order for the shipment of the required amount of beer; that Acme failed to comply with its contractual obligation to ship the first carload of beer or the car due March 15; that the defendants never did ship a full carload of beer; that pursuant to telephone conversations and correspondence, it was agreed that shipments under the contract should be held up temporarily during Collins' illness; that between April 15 and April 29, while the extension was in force, Tulsa Beverage Company ordered the resumption of shipments and that Collins and the Tulsa Beverage Company were willing and able to perform the contract; that Fox and Acme did not insist on strict compliance with the contract and led Collins and Tulsa Beverage Company to believe up until April 29 that it was all right to delay shipment, delivery, and acceptance of beer.

█ Also, since Acme and Fox first defaulted in strict compliance with the provisions of the contract requiring them to ship the first full carload of beer on time, and never having shipped a carload of beer, they were in no position, thereafter, to declare the contract terminated and retain the deposit under the provisions as to liquidated damages.[1]

█ Moreover, the temporary suspension of shipments was made subject to an agreement between the parties, and appellant could not thereafter forfeit the contract without notice to Collins demanding resumption of acceptance of beer.[2]

Affirmed.

1. In Robberson Steel Co. v. Harrell and Stebbins, 10 Cir., 177 F.2d 12, 17, we said:

"It is well settled that the right to repudiate a contract for the default of the other party thereto cannot be exercised by a party who is himself in unexcused default of performance of an essential covenant thereof. The right to terminate a contract on the ground of failure of performance by the opposite party belongs only to the party who is free from default himself."

Also see: White Oak Fuel Co. v. Carter, 8 Cir., 257 F. 54; Ross v. Tabor, 53 Cal.App. 605, 200 P. 971; Canepa v. Durham, Nev., 153 P.2d 899; Stilwell v. McDonald, 100 Or. 673, 198 P. 567.

2. See Arthur Lundberg, et al. v. A. I. Switzer, 146 Wash. 416, 263 P. 178, 59 A.L.R. 131; Roper v. Caterpillar Tractor Co., 98 Mont. 76, 37 P.2d 817; Williston on Contracts, paragraph 688; Lemon v. Hancock, 62 Cal.App.2d 895, 145 P.2d 597; Geroy v. Upper, Or., 187 P. 2d 602.