DE ETTE RAKOW, ADMINISTRATRIX, APPELLEE, v. ROBERT J. TATE ET AL., APPELLANTS.

FILED FEBRUARY 25, 1913. No. 16,911.

1. **Quieting Title:** VENUE: PROCESS. An action, the purpose of which is to quiet the title to real estate, must be brought in the county in which the real estate is situated. Where the suit is instituted in the district court of such county, the summons may be served on the defendant in any county of the state where he may reside or be found. In such case, the court where the action is pending will have jurisdiction over both the defendant and the subject matter of the action, and summons may be issued and served upon any other necessary or proper defendant, if served anywhere within this state. It is not essential in such case that a summons be served upon any one within the county where the suit is pending.

2. **Appearance.** Where a summons is served upon a person other than the principal defendant, but who is made a party to the suit, and such person appears and by a cross-petition demands affirmative relief, the question of jurisdiction over him will not arise.

3. **Quieting Title:** DISCLAIMER. In such case the filing of a disclaimer of any interest in the real estate by the principal defendant will not defeat the jurisdiction of the court, the disclaimer not having been made in any form prior thereto.

4. ———: CLOUD ON TITLE. A written contract by which the plaintiff agrees to sell his real estate to the defendant for a fixed price, and which the defendant purchaser causes to be recorded in the office of the register of deeds of the county where the land is situated, casts a cloud on plaintiff's title to the land where the contract is abandoned and the record of the contract is not canceled by the person named as purchaser, and an action in equity may be maintained by the person named as vendor for the purpose of removing the cloud and quieting the title.

5. ———: ———. In such case the fact that a part of the land described in the written agreement constitutes the exempt home-

stead of the person named as vendor, and which agreement was not signed by his wife, will not defeat the right of the owner of the real estate to have the cloud removed and his title quieted.

6. **Abatement.** Where an action upon the same contract is filed in another county in this state by the defendant in the instànt case as plaintiff, but in which the court acquired no jurisdiction over the person of defendant, plaintiff in this case, such action will not abate this one.

7. **Equity: Relief.** Where an action in equity is properly brought and the court has jurisdiction over the subject matter and all the parties to the suit, it is the duty of the court to adjudicate all questions and rights presented by the pleadings in order to do full justice to all parties before it.

8. **Quieting Title: Evidence.** The evidence is examined, and it is found that the findings and decree of the district court are sustained thereby.

APPEAL from the district court for Antelope county: ANSON A. WELCH, JUDGE. *Affirmed.*

*J. J. Sullivan, E. C. Strode* and *M. V. Beghtol,* for appellants.

*Charles H. Kelsey* and *J. W. Rice, contra.*

REESE, C. J.

This is an action by plaintiff, August G. Rakow, against defendants Robert J. Tate and the First National Bank of Fremont, Nebraska, the object and purpose of which is to quiet the title to the southwest quarter of section 14 and the southeast quarter of section 15, all in township 26, range 5, in Antelope county. It is alleged in the amended petition that on the 14th day of September, 1907, plaintiff, as party of the first part, and Robert J. Tate, as party of the second part, entered into a certain written agreement, in two parts, by which plaintiff agreed to sell defendant the land above described upon condition that defendant should approve the purchase and sale, and, if so approved, the deed was to be made to him October 14 of the same year and left in escrow with the First

National Bank of Fremont; that defendant was to pay to plaintiff the sum of $14,400 by a warranty deed to the east half of section 26 and the east half of section 35, all in township number 15, range 47, in Cheyenne county, the consideration of which was $16,000, plaintiff paying the difference of $1,600, evidenced by his promissory note executed to defendant due March 1, 1908; that, in case the said party of the "second" part (*sic*) should refuse or neglect to pay the purchase money as agreed, said party should thereby forfeit any rights he may have to said land and also should forfeit any money paid in part performance of the contract, but that the first party might, at his election, waive a forfeiture of the contract and proceed to collect the purchase money, and in such event default in payment of interest or principal should cause the whole amount to become due and payable at the election of the first party; that upon a compliance with the terms of the contract by the second party he should be entitled to the possession of the land, but upon a failure by him to comply therewith his right to possession should terminate, and he should surrender the possession of the land and improvements thereon to the party of the first part.

The other part of said agreement was embodied in a somewhat similar writing binding defendant to convey to plaintiff the east half of section 26 and the east half of section 35, all in township 15, range 47, in Cheyenne county, the deed or deeds to be made and deposited in the First National Bank of Fremont on the same date that required the deposit by plaintiff—October 14, 1907—together with an abstract of defendant's title thereto, showing perfect title. If, upon examination of plaintiff's land by defendant, he approved the sale or exchange, the $1,600 note executed by plaintiff to defendant was to be retained by defendant, and the deeds delivered, otherwise the note was to be returned to plaintiff; but, in case plaintiff failed to comply with the agreement, the $1,600 should be forfeited to defendant. These two writings were evidently intended to embody one agreement and should be so

treated. They are both set out at length in the petition, but it is believed that the foregoing fairly sets out the material parts thereof.

It is alleged that it was expressly agreed and understood between the parties that the promissory note signed by plaintiff should not become effective and binding until plaintiff's real estate had been inspected by defendant, and the contract approved by him, after his examination, and the contract and note signed by the wife of plaintiff; that neither the written contract nor note was ever in fact delivered; that they were never assented to and signed by plaintiff's wife, nor was the agreement ratified by defendant, and the transaction was rescinded and revoked by plaintiff; that plaintiff is a married man, the head of a family, and that his exempt homestead is included in the land owned by him and described in said agreement; that in violation of the terms and conditions of the agreement defendant had unlawfully, wrongfully and fraudulently caused the written agreement to be filed and recorded in the records of the register of deeds of Antelope county on the 18th day of October, 1907, and entered on the numerical index of said county, by which a cloud had been cast upon plaintiff's title, and had as wrongfully and fraudulently sold and transferred the $1,600 note to the Farmers State Bank of Plainview, Nebraska, which claimed to be an innocent purchaser thereof, and that the First National Bank of Fremont claimed to have some interest in said note, but it is alleged that such banks had knowledge of the invalidity of the note before they obtained it; that on the 14th day of October the defendant was not the owner of the land which he had contracted to convey to plaintiff, and did not leave in escrow with the First National Bank of Fremont a warranty deed conveying the land to plaintiff, nor did he furnish an abstract of the title thereto, or to any part thereof. The prayer of the petition is for the cancelation of the written agreement and promissory note; that defendant be adjudged to have no interest in plaintiff's real estate; that plaintiff's title thereto be quieted;

that the cloud thereon caused by the record of said agreement be removed; and that the note be ordered surrendered to plaintiff, or, in the event that it be found said banks or either of them holds said note in good faith, that plaintiff may have judgment against defendant Tate for the amount thereof, and for general equitable relief. Summonses were issued and served upon defendants. The Plainview bank showed that it had held the note, but it had been surrendered to defendant before the institution of the suit.

Defendant Tate answered, objecting to the jurisdiction of the court. He also disclaimed any interest, lien or claim upon the land either at the time of answering or the commencement of the suit. He presented as a plea in abatement the pendency of a suit instituted in Cheyenne county by him against plaintiff, which, he alleged, involved the same subject matter, but which, upon a special appearance by plaintiff herein, who was defendant in said action, was dismissed for want of jurisdiction, and from which judgment defendant had appealed to the supreme court, where the action was still pending. Defendant further answered, without waiving the objection to jurisdiction or plea in abatement, admitting the execution of the agreement and note, alleging their unconditional delivery, denying that any of the papers were to be signed by the wife of plaintiff, alleging that the contract was approved by him, and denying that the agreement was revoked by plaintiff. The averments that plaintiff is a married man, and that a portion of his land, described in the contract, was his homestead, are admitted, as also the recording of the agreement for the sale of the land, that the $1,600 note was sold to the Farmers State Bank of Plainview, and that the defendant the First National Bank of Fremont owns said note. It is alleged that on the 14th day of October, 1907, defendant was the actual owner of the land in Cheyenne county described in the contract, and that a deed thereto was executed by defendant and wife and deposited in the First National Bank of Fremont.

The chain of title is set out, but which need not be here recited.  It is shown that the title to a part thereof and the possession of all was in Charley Olson, a portion thereof being held by him under a contract with the Union Pacific Railroad Company, the final payment thereon having been made September 30, 1907, and the deed executed by the railroad company November 21, 1907; that, before the execution of the agreement with plaintiff, W. T. Tate, an agent of defendant, had held a contract with Olson and wife for the purchase of the land, and which W. T. Tate had assigned to defendant so that defendant could obtain a deed at any time and comply with his contract with plaintiff, and on October 23, 1907, Olson and wife conveyed the land to defendant, and the deed was recorded April 3, 1908; that the delay in obtaining the deed and presenting the abstract of title was because of plaintiff's refusal to perform his part of the agreement.  The prayer of the answer is that the prayer of the petition, "except as to the quieting of the title to said real estate, be denied; that this defendant's objection to the jurisdiction of the court over his person and over the subject matter with reference to said note be sustained, and said matter be dismissed for want of jurisdiction; and that, if said objection to the jurisdiction is overruled, this defendant's plea in abatement be sustained, and said cause be dismissed, and for costs."   Other averments of the petition are denied.  A transcript of the proceedings of the district court for Cheyenne county in the case of *Tate v. Rakow* is attached to the answer.

The First National Bank of Fremont filed its answer and cross-petition, which, in part, is practically a repetition of the contents of the answer of defendant Tate, which is followed by what we may term an action on the $1,600 note held by the bank, which is alleged to have been purchased in good faith, for value before maturity, and without notice or knowledge that any defense thereto was claimed by plaintiff; and the prayer is for judgment against plaintiff for the amount thereof, including interest.

Plaintiff replied specifically, denying the essential affirmative averments of the answer of defendant Tate, and averring that defendant Tate refused to approve the agreement; that plaintiff thereupon revoked and rescinded the contract, and notified defendant that the offer was withdrawn. The cause was tried to the court, submitted, and taken under advisement September 9, 1909. On the 7th day of October, 1909, plaintiff, August G. Rakow, died, and on the 15th day of December, of the same year, the cause was conditionally revived in the name of De Ette Rakow, the administratrix of his estate. On the 8th day of January, 1910, the order of revivor was made absolute.

On the 3d day of May, 1910, the findings and decree were entered in favor of plaintiff De Ette Rakow, as administratrix, in which the facts as found by the court were set out, including the homestead character of plaintiff's land; that no part of the agreement was signed by the wife, nor was any part thereof acknowledged by either husband or wife; that on September 20, 1909, defendant examined plaintiff's land, when he declared that unless plaintiff reduced the price of his land $2.50 an acre there was no deal, whereupon plaintiff informed defendant that he "would call the deal off," and requested the return of his note; that defendant Tate did not on said day approve of the land, nor agree to take the land upon the terms prescribed in the agreement; that on that day, without the knowledge or consent of Rakow, defendant sold and indorsed the note for value to the Farmers State Bank of Plainview, which purchased the same in the ordinary course of business and without notice of any defense thereto; that on October 14, 1907, Tate and wife executed a deed to Rakow of the Cheyenne county land, and deposited it in the First National Bank of Fremont, but that at that time he was not the owner in fee of said land, and no conveyance thereof was made to him until Ocober 23, 1907, which was delivered to Tate and recorded in the deed records of Cheyenne county April 3, 1908; that on November 21, 1907, the Union Pacific Railroad Company executed

a deed conveying the east half of section 35 to Olson, and which was recorded in the proper county records the 29th day of the same month; that defendant never furnished nor offered to furnish to Rakow an abstract of title to the Cheyenne county land, and Rakow never executed nor offered to execute a deed to the land in Antelope county to Tate, and from and after September 20, 1907, refused so to do; that on January 21, 1908, Tate brought an action against Rakow in the district court for Cheyenne county, alleging the sale and purchase of the Antelope county land, which was approved by him, the failure of Rakow to perform the agreement, that Tate elected to forfeit all interest which Rakow had in the Cheyenne county land and the money paid thereon, and declared a forfeiture of the $1,600 note, and that said cause was afterward dismissed by the court for want of jurisdiction over Rakow; that on November 25, 1907, the Iowa State National Bank of Sioux City, Iowa, purchased the $1,600 note from the Farmers State Bank in due course of business and for value, and the same was subsequently and in a similar way purchased by the Fremont bank, all of which was before the maturity of said note.

The conclusions of law are quite elaborate, and will not be here set out. They are, in substance and effect, that the completion of the agreement of September 14, 1907, was made to depend upon the examination of the Antelope county land and approval of the deal by Tate before October 14, 1907, and if he refused to accept the proposition the note referred to was to be void; that on September 20, 1907, Tate examined the land and rejected the proposition contained in the agreement; that at that time Rakow declared the contract at an end and demanded the return of the note which he had signed; that by the action of the parties the contract was then annulled and terminated, and could not be enforced by either party, and Tate had no power or right to forfeit the $1,600 note; that the written agreement, so far as it affected the homestead of Rakow—the southwest quarter of section 14—was null

and void; that the failure of Tate to have title to the Cheyenne county land at the time he made his deed, and his failure to furnish an abstract of title thereto, as stipulated in the agreement, constituted a default on his part which prevented him from enforcing a forfeiture of the note; that the banks were innocent purchasers of said note, and the Fremont bank, being the owner and holder thereof, was entitled to recover the amount thereof from Rakow's estate, the same being found to be the sum of $1,947.55, and plaintiff was entitled to recover from Tate the same amount. Decree and judgment were rendered accordingly. Defendant Tate appeals.

The defenses pleaded will be noticed in the order in which they are presented. The contention that the court was without jurisdiction contains no merit. The contract on the part of Rakow was recorded by Tate in Antelope county and constituted a cloud upon the title to Rakow's land, and no cautious purchaser would have bought it with that record against it uncanceled. Had Tate caused the cancelation of the record thereof at any time before the beginning of this suit, there would be reason for the contention of no jurisdiction, but he failed to do this. The public records are for the purpose of giving notice of the interests in or ownership of the land to be affected thereby. This recorded contract gave notice to the world of defendant's claimed interest in the land, and to that extent apparently affected Rakow's title, and he was entitled to have it canceled, either by Tate, or by his authority, or by a court of equity.

The contention that the agreement was of no force does not apply, as the proof of the invalidity of the record would have to be made dehors the record, and, until attacked by an equitable proceeding and canceled by a decree, it implied just what it said. *Corey v. Schuster, Hingston & Co.,* 44 Neb. 269; *Smith v. Neufeld,* 57 Neb. 660; *Sanxay v. Hunger,* 42 Ind. 44.

The action to quiet title must be brought in the county where the land to be affected is situated. Code, sec. 51.

*Johnson v. Samuelson*, 82 Neb. 201. It follows that the action was rightly commenced in Antelope county, and that the service of summons was properly made on Tate without the county. There is no appeal from the judgment in favor of the First National Bank of Fremont, and that part of the case will not be considered.

It is insisted, however, that the court erred in rendering judgment against Tate for the amount of the note, which he had sold, and for which the judgment in favor of the Fremont National Bank was rendered against Rakow's estate. The giving of the note, whether delivered or not, inhered in and was a part of the main transaction. By the action of Tate in terminating the contract on the 20th of September the note became the property of Rakow, and he was entitled to its surrender. Instead of so doing, the defendant sold it, and thereby created a liability against Rakow where none would have existed had not the note been transferred to innocent purchasers. It is a well-settled rule that, where a court of equity obtains jurisdiction of a cause, it will retain it until all questions involved in the case are adjudicated, doing complete justice between the parties. This rule applied fully justified the settlement of all controversies growing out of the main case between the parties, and there was no error in this action of the court. By the sale and transfer of the note to innocent purchasers, thereby creating a liability against Rakow, where none existed before, defendant created a liability against himself in favor of Rakow, and it was entirely proper to adjudicate all questions growing out of the contract.

A plea in abatement was presented and overruled, and of which ruling complaint is made. This subject will be briefly noticed. The final decision of the case mentioned in the plea was rendered by this court on the 21st of May, 1909 (*Tate v. Rakow*, 84 Neb. 459), where it was held that the district court for Cheyenne county never obtained jurisdiction over Rakow, and affirming the judgment of that court. Aside from the question of the

identity of the cause of action pleaded in the two cases, it is very clear that the district court never had jurisdiction to render any judgment or decree against Rakow, and therefore the case was not pending in the sense that would bar the jurisdiction of the district court for Antelope county, where Rakow's land was situated. The district court for Cheyenne county could neither have enforced the contract nor quieted the title of the Antelope county land. The plea was properly overruled.

It is claimed that the findings and decree are not sustained by the evidence and contrary thereto. We do not so view it. The evidence is conflicting on the material parts in the case. The written agreement provides that, if defendant did not approve the purchase of the Rakow land after inspecting it, the note was to be returned to Rakow, and the contract abandoned. He inspected the land September 20, 1907—one week after signing the agreement. The evidence is clear that, upon the examination, he sought to have the agreed price reduced. Rakow testified that defendant insisted upon it, and declined to proceed with the trade unless upon the reduction, and declined to perfect the deal, and that after defendant's declination Rakow notified defendant of his refusal to consider it further, and demanded the posession of the note. He also testified that the note was never delivered to defendant, but that it was agreed he might hold it, as custodian, until it was finally decided as to whether they would carry out the agreement or not, and if that were done defendant should retain the note; if not, it was to be returned to Rakow. True, defendant and another testified to the contrary; but viewing all the circumstances, as shown, we incline to the conclusion adopted by the district court. The note was sold to the Plainview bank on the same day that the defendant inspected the land, and, as alleged and testified to by Rakow, refused to proceed with the contract unless Rakow would reduce the contract price $2.50 an acre. Defendant failed to furnish an abstract of the title to the Cheyenne county

land. He testified that the reason why he did not do so was because Rakow had refused to complete the agreement. The fact, however, remains that at the time he deposited his deed in the bank he could not have done so and shown a perfect title, for the reason that Olson, his grantor, had no deed either of record or otherwise to a part of the real estate, and a perfect title could not have been shown by an abstract of the record.

We have examined the transcript and bill of exceptions with care, and can see no sufficient reason why the decision of the district court should be reversed. It is therefore

AFFIRMED.