56 P.(2d) 1123

**DUNKEN v. GUESS.**

No. 4067.

Supreme Court of New Mexico.

March 26, 1936.

O. E. Little, of Roswell, for appellant. J. L. Lawson, of Alamogordo, for appellee.

BICKLEY, Justice.

The appellee (plaintiff) in March, 1933, commenced a suit to quiet title to land in statutory form. Appellant (defendant) answered by way of denials, and set up as affirmative defense that the equitable title is in him. The parties will hereinafter be referred to as plaintiff and defendant.

They both claim title from a common source. Each filed a motion for judgment on the pleadings. They agree that these motions should be treated as demurrers.

 Bearing in mind the presumption which attends the correctness of the judgment in the trial court, we look to the pleadings to ascertain whether there are facts well pleaded unimpaired by other facts well pleaded sufficient to support the judgment. We also keep in mind throughout the principle announced in Pomeroy's Equity Jurisprudence (4th Ed.) § 682, that: "Between a legal and equitable title to the same subject-matter, the legal title in general prevails, in pursuance of the maxim, Where there is equal equity the law must prevail."

The following facts and conclusions appear from the pleadings and the admissions of the parties in their briefs in this court: One Leroy O. Moore agreed in writing to select for and on behalf of Jeffers and Longwell the lands in controversy. It appears that Moore was a dealer in land scrip and was placing the same for and on behalf of Jeffers and Longwell. According to defendant's allegations, he succeeded by assignment to the rights of Jeffers and Longwell, and that plaintiff had actual notice thereof and also constructive notice thereof through the appropriate recordation of assignment to him which embodied the Jeffers-Longwell and Moore contract. It is agreed by the parties that the plaintiff succeeded to all of the rights of Moore under the contract and that defendant succeeded to all the rights of Jeffers and Longwell thereunder.

From the Jeffers-Longwell and Moore contract it appears that Moore was to receive $14,880 for selecting 4,960 acres of land for and on behalf of Jeffers and Longwell upon condition that Jeffers and Longwell should pay the sum of $4.50 per acre after deducting the cash payment of $14,880, or, in other words, $3 per acre, and execute two notes for $3,720 each, payable on or before 15 years after date, with interest at 8 per cent. per annum, payable semiannually. Moore was to make the selection and prepare a deed for the same to Jeffers and Longwell. A patent to the land was issued to the Santa Fé Pacific Railway Company. No claim is made that either Jeffers or Longwell or the defendant, Guess, ever paid the interest on the balance due under said contract or the taxes on the property or the balance of the principal sum due under the contract, or that any offer was ever made to pay the same.

Moore died June 8, 1918, before patent was issued. He left a will in which Maisie K. Moore was named an executrix and Theodore N. Espe executor of his estate (hereinafter referred to as executors). After patent was issued February 23, 1922, the land was deeded by the patentee to the executors. A few months later Espe as executor notified Jeffers and Longwell that patent had issued and that the estate of Moore was prepared to carry out the terms

of the original contract, and requested them to pay up the interest due and the remainder of the purchase price. It appears that the said Jeffers and Longwell were unable to pay the interest, the taxes on the property, or the remainder of the purchase price, and they notified the said representative of the estate of Moore that they were unable to carry out their contract. It appears that the defendant, Guess, on the date of his acquisition of the interest of Jeffers and Longwell under said contract and prior thereto, knew that Jeffers and Longwell had failed to carry out their contract and had forfeited and abandoned the same; that since said date the said defendant, Guess, has failed to pay the interest on the notes, the taxes, or any part of the balance due under the contract, and notified the attorney for Mrs. Maisie K. (Moore) Neblett, who was then the owner of the land, that it was impossible for him to carry out the terms of the original contract and that the lands were not worth half what it would take to comply with the contract, and attempted to lease the lands from the said owner. It appears that no interest has been paid on said notes since August 1, 1920. No taxes have been paid by defendant or those under whom he claims, and no part of the principal of said notes for the balance due has been paid. The legal title to the lands is in the plaintiff, based upon a deed from Maisie K. Neblett, who acquired her title by deed from the executors of the estate of Moore.

■ Defendant's appraisal of the situation is that the plaintiff has only a vendor's lien, and he complains that plaintiff at most could only foreclose such lien, and that suit to quiet title is not an appropriate remedy for him under the facts, and that the decree to quiet the plaintiff's title is inequitable because defendant is deprived of a statutory right of redemption. We think defendant is mistaken. In a note to the text of 51 C.J., Quieting Title, § 46, it is said: "A written contract to sell real estate, recorded in the office of the register of deeds and not canceled when the contract is abandoned, casts a cloud on the vendor's title authorizing a suit by him to quiet title. Rakow v. Tate, 93 Neb. 198, 140 N.W. 162."

It has been said in some decisions that the vendor's lien may arise before conveyance as well as after, and that the interest or right of the vendor under an ordinary contract of the sale of land has sometimes been called a vendor's lien and treated in the same manner as the equitable lien arising in favor of the grantor upon an actual conveyance of the land where the purchase price in whole or in part is left unpaid. Mr. Pomeroy, in his work on Equity Jurisprudence (4th Ed.) § 1260, says as to these decisions: "This is an unnecessary and an incorrect use of terms; it confounds legal notions which are essentially different. There is a plain distinction between the lien of the grantor after a conveyance, and the interest of the vendor before conveyance. The former is not a

legal estate, but is a mere equitable charge on the land; it is not even, in strictness, an equitable lien until declared and established by judicial decree. In the latter, although possession may have been delivered to the vendee, and although under the doctrine of conversion the vendee may have acquired an equitable estate, yet the vendor retains the legal title, and the vendee cannot prejudice that legal title, or do anything by which it shall be divested, except by performing the very obligation on his part which the retention of such title was intended to secure,—namely, by paying the price according to the terms of the contract. To call this complete legal title a lien, is certainly a misnomer. In case of a conveyance, the grantor has a lien, but no title. In case of a contract for sale before conveyance, the vendor has the legal title, and has no need of any lien; his title is a more efficient security, since the vendee cannot defeat it by any act or transfer even to or with a bona fide purchaser."

For holding of this court in accord with Mr. Pomeroy's view just quoted, see Albuquerque Lumber Co. v. Tomei et ux., 32 N.M. 5, 250 P. 21.

Defendant at first advanced the idea that plaintiff must succeed on the strength of his own title and not on the weakness of the defendant's title. He later accedes to the statement that this is not the rule where both parties trace their respective titles to a common source, as is true in the case at bar, and agrees that: "In such case plaintiff need not show his title good as against the whole world but only against the defendant and the one who has superior title or equity must prevail," which is to be found in the article on quieting title in 51 C.J. § 76.

If we take the view of defendant that the Jeffers-Longwell and Moore contract is analogous to a sale by Moore to Jeffers and Longwell, we do not find him in a position to defeat the title of plaintiff. In the article on quieting title in 51 C.J. § 188, it is said: "Where the contract is one of sale, an answer which contains no statement of facts showing performance of condition precedent by defendant, or excuse for non-performance fails to state a defense."

In the article on vendor and purchaser, 66 C.J. § 1330, the principle is thus stated: "While vendee may defend on the ground that he has complied with the contract so that he is entitled to a conveyance, it has been held that a defense not based on an offer or effort to comply with the contract is not available."

Plaintiff (appellee) cites many cases which support the principles announced in the text last quoted.

Appellant advances the proposition that the vendor must pay back to the vendee the portion of the purchase money paid before he can recover possession of the land or quiet the title thereto against vendee in default under the contract of sale. This is not the law. In Glock v. Howard & Wilson Colony Co., 123 Cal. 1, 55 P. 713,

43 L.R.A. 199, 69 Am.St.Rep. 17, in a well-considered opinion, it was decided: "If a vendee does not complete his payments as stipulated in his contract to purchase, the vendor may always retain the moneys received by him, unless the vendee shows some equitable ground for relief, and it is not material whether or not the contract stipulated that the vendor might retain such moneys."

The court said: "When an equitable showing is not made to excuse the breach, the vendor has the right in equity, as he always has at law, to retain the moneys paid by the vendee."

The court quoted the language of the Supreme Court of the United States employed in Hansbrough v. Peck, 5 Wall. 497, 18 L.Ed. 520, as follows: "No rule in respect to the contract is better settled than this: that the party who has advanced money or done an act in part performance of the agreement, and then stops short, and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done."

In Turnbow et ux. v. Keller (1933) 142 Or. 200, 12 P.(2d) 558, 19 P.(2d) 1089, in a suit to foreclose the vendee's rights under a contract for sale of land, it was decided:

"Vendors having been at all times ready and able to perform contract where no rescission thereof occurred held entitled to benefit of rules allowing strict foreclosure on purchasers' default.

"Purchasers in default under unrescinded land contract involved in vendors' foreclosure suit held not entitled to recover payments already made."

In the annotation to Nicolopoolos v. Hill, 217 Ala. 589, 117 So. 185, 59 A.L.R. 185, entitled "Vendee's right to recover amount paid under executory contract for sale of land," appears the following:

"I. Where vendee is in default.

"a. In general; refusal to carry out contract.

"The cases in which the vendee is entitled to recover money paid on the purchase price of land where the contract has been rescinded are: First, those where the rescission is voluntary and with the mutual consent of the parties and without default on either side; second, those where the vendor cannot or will not perform the contract on his part; third, those where the vendor has been guilty of fraud in making the contract; fourth, those where, by the terms of the contract, it is left in the purchaser's power to rescind by any act on his part, and he does it; fifth, those where neither party is ready to complete the contract at the stipulated time, but each is in default. Baston v. Clifford (1873) 68 Ill. 67, 18 Am.Rep. 547.

"The doctrine has been asserted that no rule in respect to a contract for the sale of real estate is better settled than that the party who has advanced money or done an act in part performance of the agree-

ment, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfill his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done. Hansbrough v. Peck (1867) 5 Wall. 497, 18 L.Ed. 520."

The case at bar falls outside of any of these classes of cases.

In Spellman v. Dundalk Co., 164 Md. 465, 165 A. 192, 194, it was said: "The case, therefore, is simply one where the plaintiff has violated the contract in a material matter, and, declining to perform his own solemn obligations because he so wills, would make his own breach of the contract under seal the basis of an action at law. The vendor has always been ready, able, and willing to perform its part of the contract. Under these circumstances the following statement and comment by Judge Miller in Davis v. Hall, 52 Md. 673, at page 682, is strikingly apposite: 'The vendee paid the first installment, and then refused to complete the contract and left the premises. The vendor afterwards sold the property to another party, and the vendee then brought assumpsit to recover back what he had paid. The Court held that a party who has advanced money or done an act in part-performance of an agreement, and then stops and refuses to proceed to the ultimate conclusion of the agreement, the other party being ready and willing to proceed and fulfill all his stipulations according to the contract, has never been suffered to recover for what has been thus advanced or done.'" (Cases cited.)

Applying the foregoing principles, it appears that in the case at bar that the defendant, Guess, was brought before a court of equity and called upon to pay the money due under the contract or be forever foreclosed of setting up any claim against the land. His answer contained no showing of compliance with the contract under which he asserted his alleged claim of equitable title. The plaintiff having been ready and able to perform the contract, it would be singular to suppose that the defendant could assert an equity arising out of his own neglect.

We have considered all of the objections of the appellant to the judgment and find them to be without merit.

In view of our conclusion, we find it unnecessary to rule upon appellee's motion to strike portions of the transcript.

Finding no error in the record, the judgment is affirmed and the cause remanded, and it is so ordered.

SADLER, C. J., and HUDSPETH, BRICE, and ZINN, JJ., concur.