KINGSTON H. MILLER, APPELLANT, V. HARVEY H. KNIGHT
ET AL., APPELLEES.

19 N. W. 2d 153

FILED JUNE 8, 1945.  No. 31934.

Beatty & Clarke, for appellant.

L. A. DeVoe, Beeler, Crosby & Baskins, for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

This is an injunction suit, commenced by Kingston H. Miller, to restrain alleged trespasses by Harvey H. Knight and others acting through him, upon lands claimed by Miller as owner. The answer of Knight, who will hereafter be referred to as the defendant, denied plaintiff's right to possession and alleged the ownership of the land in himself. The plaintiff by cross-petition then claimed that he purchased the land and that the title thereto was taken in the name of the defendant as security for amounts loaned to plaintiff by the defendant in making the purchase. Plain-

tiff alleged that he had repaid all of said monies advanced by the defendant, and that defendant now held the title of the property in trust for him. The trial court found for the defendant Knight on all of the issues in controversy, and plaintiff appeals.

The land primarily involved in this suit will be referred to as section 35. Prior to 1927 it was owned by one Cady. In November, 1927, plaintiff took an option to purchase the land from Cady for $3,200, $100 to be paid in cash, $966.67 on March 1, 1928, and the balance to be evidenced by a mortgage for $2,133.33 for five years at 5 per cent per annum. The evidence is in conflict as to whether plaintiff or defendant furnished the $100 cash payment. The parties agree, however, that on March 1, 1928, plaintiff could not raise the $966.67 due on that date and that defendant paid Cady the amount. Defendant thereupon took title to the property by deed from Cady and executed the note and mortgage to Cady for the $2,133.33 remaining due. It is the contention of defendant that he bought the land and arranged with the plaintiff that if plaintiff would pay him the principal and interest advanced and pay off the note and mortgage he would deed the land to him. Plaintiff claims that defendant loaned him the money and took the deed in defendant's name as security therefor. When the mortgage came due in 1933, plaintiff was unable to pay it off, and defendant caused it to be extended three years, at the end of which period of time defendant paid off the mortgage. It is admitted that defendant made all interest payments during the life of the mortgage and paid the taxes which fell due on the land.

Plaintiff contends that he repaid all amounts of interest to the defendant and made annual payments which reduced the principal to approximately $380, although he claims to have agreed with defendant that the amount remaining due was $460. Plaintiff claims to have paid varying amounts of principal and interest during the life of the mortgage, which he attempted to establish by a record book alleged to have been kept by him during the years involved. The rec-

ord book is in evidence and has the appearance of having been made at one time for the purposes of the trial. In explaining the source of the funds and how they were paid to the defendant, the evidence was so unsatisfactory as to be of little weight. We think the trial court was correct in finding that the record book was not kept currently throughout the happening of the events which it purports to represent, and that it has little or no weight as evidence. We are also of the opinion that the trial court was correct in holding that the evidence will not sustain a finding that the interest payments were fully paid to the defendant, although there is evidence that a part of some of them *were* paid. In this respect, plaintiff claims to have made annual payments in amounts varying from $50 to $600. No checks were given for any of these amounts, plaintiff contending that he sold cattle, hogs and farm produce to raise the money and carried the cash on his person until he paid it over to the defendant. All this the defendant denies. We think the trial court was justified in finding that plaintiff did not sustain the burden of proving the payments which he claims he made.

It is evident throughout the record that the affairs of plaintiff and those of his parents, Fred M. C. Miller and Anna Miller, were confused by the mutual interests of each in the affairs of the others. The defendant dealt with the Millers and made loans and signed notes for them for many years. It appears that in May, 1944, Anna Miller sold three quarters of land in section 2 to the defendant for $4,141. It is the contention of plaintiff that the balance of the indebtedness owing by him on section 35 was withheld by defendant from the purchase price of the three quarters in section 2, and from that time on that he was the sole owner of the land and entitled to a deed from the defendant. A brief review of the contentions of the parties with reference to the settlement in 1944 seems necessary.

It appears that, at the time of the purchase of the three quarters of land in section 2, Anna Miller had borrowed $900 from the defendant. There remained due on this note

at the time of the purported settlement the sum of $381.99. Plaintiff contends that defendant, with the assistance of his banker, determined that there was $460 remaining due the defendant on the monies advanced by him on the transaction involving section 35. This, with two checks totaling $3,300 appearing in the record, makes the full payment of $4,141 for the three quarters in section 2, the 99 cents being "knocked off," according to the plaintiff, to make it even.

The defendant contends that in 1936, when the mortgage became due after the extension of three years had elapsed, the agreement was cancelled, the interests of plaintiff terminated, and the land leased to plaintiff for a rental of $100 per year. It is defendant's contention that he purchased the three quarters in section 2 for $3,300 and the cancellation of all indebtedness owed by the Millers. This indebtedness, according to the defendant, consisted of $250 for lease rentals on section 35, $50 on a school lease, and the balance being the amount due on notes held by defendant which appear in the record. It is true that defendant's evidence is not very satisfactory as to how the sum of $841 was fixed. On the other hand, it was not material to the issue if he purchased the three quarters in section 2 for $3,300 and the cancellation of all existing indebtedness between the parties, as he testified. Defendant's evidence is that the calculation of the interest and the determination of the amount remaining due was made by D. D. Cole, the banker at Keystone. The figures of Cole are not in the record, and how he arrived at the amount shown as the consideration in the deed is not explained. It is not possible to verify with exactness the contentions of either of the parties on this phase of the controversy by the record. The evidence is in direct conflict in so far as the material issues are concerned. All during the time that plaintiff was making the payments of interest and principal claimed to have been made by him, he was borrowing money for his own use. He has no records and cannot show with any degree of satisfaction that the payments were made as claimed. The trial court observed the witnesses, their demeanor and

conduct while testifying, and evidently came to the conclusion that the evidence, considered as a whole, supported the version testified to by the defendant. While we are obliged in an equity action to try the issues of fact *de novo* upon the evidence in the bill of exceptions and reach an independent conclusion without reference to the findings of the district court, it is a rule often announced that, where evidence of persons appearing in court as witnesses on material issues is in irreconcilable conflict, this court will consider the fact that the trial court observed their conduct and demeanor and gave credence to the testimony of some rather than to the contradictory testimony of others. *Otto v. L. L. Coryell & Son,* 141 Neb. 498, 3 N. W. 2d 915; *Chitwood Packing Co. v. Warner,* 138 Neb. 800, 295 N. W. 882. After giving effect to the foregoing rule, we conclude that the evidence supports the contentions of the defendant.

The defendant testifies that plaintiff agreed to and did surrender possession of the lands in sections 2 and 35 by the agreement made in May, 1944. The defendant says, and plaintiff does not deny it, that they drove over these lands and agreed upon the property, personal in character, which was to go with the land. On May 24, 1944, defendant leased some of the farm lands to one Ray Miller, who in turn employed one McClain to list it to corn. Defendant went upon the land thereafter and did some fencing after the contract was allegedly made. These facts are consistent with defendant's story that he not only was the owner of the property but that immediate possession had been given him by the agreement made in May, 1944. We think the evidence as a whole, when considered with the rules hereinbefore announced relative to the consideration given the findings of the trial court on evidence which is in irreconcilable conflict, sustains the defendant's version. This in turn disposes of plaintiff's contention that the court lacked the jurisdiction to enter the decree it did for the reason that the evidence showed the defendant to be out of possession, a fact, if true, that would ordinarily limit defendant to an action at law in ejectment. But when the evidence shows

as here, that defendant was in possession, the jurisdiction of the court to quiet the title is established.

Both parties invoked the powers of a court of equity. In *Frank v. Smith,* 138 Neb. 382, 293 N. W. 329, we said: "Each party in the case at bar is seeking equitable relief and each invoking the aid of a court of equity. The court properly denied a trial by jury." In the present case, no demand for a jury was made. Both parties sought equitable relief. The parties proceeded to trial on the theory that the suit was an equitable one. While we think the action was one in equity, the plaintiff is in no position to claim error prejudicial to his rights, even if it was not.

There is no rule more axiomatic than that, where a suit in equity is properly brought and the court has jurisdiction of the subject-matter and all parties to the action, it is the duty of the court to adjudicate all questions and rights presented by the pleadings in order to do full justice to all the parties to it. *Rakow v. Tate,* 93 Neb. 198, 140 N. W. 162; *First Trust Co. v. Airedale Ranch & Cattle Co.,* 136 Neb. 521, 286 N. W. 766.

Plaintiff urges also that the judgment is not supported by the pleadings. We think it is. Plaintiff's petition alleges his ownership of the land and that defendant was a trespasser thereon. He sought an injunction restraining defendant from entering upon the lands or otherwise interfering with his ownership and possession of them. Defendant answered and filed a cross-petition. He admitted plaintiff's possession as vendee in possession and lessee from March 1, 1928, to May 10, 1944. He alleges an agreement by which all differences were adjusted, possession surrendered, and all previous agreements cancelled as of May 10, 1944. We are of the opinion that this allegation is sufficient to support a finding from the evidence that defendant was in possession of section 35 when this action was commenced. In *School District v. Wood,* 144 Neb. 241, 13 N. W. 2d 153, we said: "A prayer for general relief in an equity action is as broad as the pleadings and the equitable powers of the court." See, also, *Johnson v. Radio Station WOW,* 144 Neb.

432, 14 N. W. 2d 666. It is a notable fact that both plaintiff and defendant prayed "for such other and further relief as. may be just and equitable."

For the reasons stated, we conclude that the judgment of the trial court is correct, and it is affirmed.

AFFIRMED.