LAURA HERLAN, APPELLEE, v. FRANK J. BLECK ET AL.,
APPELLANTS.

29 N. W. 2d 636

Filed November 14, 1947.    No. 32262.

*Blackledge & Sidner*, for appellants.

*Dryden & Jensen*, for appellee.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and KROGER, District Judge.

SIMMONS, C. J.

In this action plaintiff alleged that the defendants wrongfully, illegally, and with intention to defraud caused the conveyance of a residence property purchased by the plaintiff to be made to defendants. She sought a decree that the property be conveyed to her. Defendants answered alleging that plaintiff purchased the property, but that on the date of the final payment plaintiff informed the defendants that she was buying the property for them and desired only to occupy the premises so long as she might live, and directed that the conveyance be made to these defendants as joint tenants, which was done. Defendants claimed a gift. Trial was had resulting in a finding for the plaintiff as the owner of the property and a decree ordering the premises conveyed to her. Defendants appeal. We affirm the judgment of the trial court.

The defendants are the son-in-law and daughter of plaintiff.

For many years prior to the events here involved plaintiff and her husband lived on a farm in Kearney County. The defendants lived on a farm near Riverdale in Buffalo County. Plaintiff had another daughter

who was married and lived in Grand Island. The evidence indicates a not-too-cordial relationship between the two girls. In any event, defendants were more often at plaintiff's home than was the other daughter, and did the many things that a daughter and son-in-law would be doing for the daughter's parents.

Plaintiff's husband died February 8, 1944. Plaintiff was at that time 69 years of age. Defendant Frank J. Bleck was administrator of the estate. Plaintiff received some insurance money which she had on deposit in a bank. She was alone on the farm. In conferences between plaintiff and defendants it was agreed that plaintiff should buy a home for herself and move to Kearney. Defendant Frank J. Bleck made the preliminary investigations, located the property in question, and recommended its purchase. Plaintiff viewed the property and decided to purchase it.

A contract for the purchase of the premises was prepared by the real-estate agent. Defendant Frank J. Bleck and the agent went to the farm home where plaintiff signed the contract, wherein she agreed to purchase the property for $4,200, and the owners agreed to furnish her with a warranty deed. Plaintiff then made a payment by check in the amount of $1,000, leaving the balance of $3,200 to be paid when an abstract was approved. This contract is dated August 4, 1944, and the evidence is that it was signed on that date.

On either August 9 or 10, 1944, the deed involved in this action was prepared. It was mailed to Wyoming for a grantor's signature on August 11th. The deed names the defendants as grantees as joint tenants with right of survivorship. Defendants' attorney, who drew the deed, testified that according to his recollection the grantees were so named at the instruction of defendant Frank J. Bleck. Defendant Frank J. Bleck testified that his mind was a complete blank as to how that happened.

The deed was completely executed and the transaction

ready for closing on August 22, 1944. Defendant Frank J. Bleck or defendants drove to plaintiff's farm home, as they testified, to bring her to town to close the deal. She did not come to town but instead gave one or the other a check for the balance of the purchase price. Defendants testified, both by deposition and at the trial, that plaintiff then, and for the first time, told them that she wanted the title to the property placed in their names, and that nothing was said about reserving a life estate, but that it was so understood. That statement is categorically denied by plaintiff.

There is no question but that plaintiff paid for the property with two checks. The blanks in the body of the first check for $1,000 were filled in by the agent in writing, and plaintiff signed it. There is no question but that the balance to be paid was $3,200. The check for that amount is in evidence. The blank spaces are filled in in typewriting. The signature is that of the plaintiff. Plaintiff testified that the body of the check must have been filled in before she signed it, as she would not have signed a blank check. Defendants' evidence is that plaintiff signed in blank and that the payee and amount were filled in by a lawyer when the deal was closed.

The transaction was closed August 22, 1944, and the deed filed for record and recorded on August 23, 1944.

Repairs and improvements were made on the house on the premises at plaintiff's expense, and plaintiff moved into the same in September 1944, and has since occupied the premises as her home.

Plaintiff testified that in December 1944 she was told by defendant Frank J. Bleck that he had the deed and she requested it to be put in her safety box at the bank, and that a short time thereafter he said he had had the deed made out to himself and his wife. Plaintiff testified that she was dumbfounded, felt bad, did not know what to do, and said nothing at that time. She testified that repeatedly thereafter she asked the de-

fendants to convey the property to her and they refused.

Defendants testified that on the Sunday following the closing of the transaction they went to plaintiff's farm home and told her that the property had been conveyed to them, and that she was satisfied. Defendant Frank J. Bleck also testified that on two subsequent occasions she asked them about it and that they again told her it had been done. They deny that plaintiff ever asked for a conveyance until December 1945. The evidence indicates that the parties continued their cordial relationship during this period.

Defendants also testified that there was a vacant lot adjoining this property which they purchased in March 1945; that plaintiff suggested their buying it because a merchant was thinking of buying it for a refreshment stand. Defendant Frank J. Bleck testified plaintiff said: "* * * 'You kids don't want that stand right under your nose here' * * *." Defendant Cecelia Bleck testified that if defendants bought the lot "* * * it would make a nice layout * * *" for them.

Sometime in November 1945, a serious dispute arose between plaintiff and defendants about a doctor for plaintiff. It resulted in physical abuse of plaintiff.

Early in 1946, plaintiff consulted the attorney who now represents defendants about this matter looking toward securing title to the property. No representation followed and thereafter other counsel was secured and this action was started April 19, 1946.

It is to be remembered that defendants by answer alleged that at the time the contract of purchase was signed and the down payment made, they "* * * assumed, and had no reason to believe otherwise, that the plaintiff intended to purchase the same in her own name"; and that "* * * on the date that the final payment was made * * * the plaintiff informed these defendants that she was buying this property for these defendants; that she wanted the title placed in the name of these defendants * * * and that the plaintiff only wanted to occupy the

same as her home so long as she might live, and that in accordance with this expressed direction and instruction, and with full knowledge of the plaintiff, the deed of conveyance was prepared to these defendants as joint tenants, * * *."

Now, what are the facts? Plaintiff denied that she ever made any such statement or gave any such instruction. There can be no question about these two facts: The statement, if made by plaintiff, was made on August 22, 1944. Defendants themselves so testify. The deed conveying the property to defendants was by defendant's direction prepared at least 12 days before the intention and direction to have title conveyed to defendants were allegedly expressed, and at a time when defendants by their own answer "* * * assumed, and had no reason to believe otherwise, that the plaintiff intended to purchase the same in her own name." Having the grantees so named far in advance of August 22, 1944, is unexplained on any basis. In this connection there is one rather significant answer to a question given by defendant Cecelia Bleck. She had testified that the first conversation with the plaintiff about their having title to the property was on August 22, 1944. She then was asked, "And Frank had never discussed it before that date, with you." She answered, "I wouldn't say." This evidence is its own commentary.

It is apparent that beginning with the time defendant Frank J. Bleck gave instructions as to the grantees of the deed he had complete control of the transaction until it was closed and title vested in defendants.

We think the testimony as to the $3,200 check is significant. Plaintiff testified that the payee and the amount of the check were filled in when she signed it. Defendants testify that it was signed in blank. The alignment of the typing on the check is not too good. The letters indicate that the type was dirty, resulting in solid impressions of the letters "o", "n", "a", "e", and "s". It is not the work of a well-kept machine.

More than that, however, is this fact—while the plaintiff might not have known the name of the payee to insert in the check, there was no question about the amount that she was to pay, and no reason is apparent for not filling in the amount of the check. While plaintiff testifies as to her poor health, her testimony does not indicate any lack of mental acumen. We think it a proper conclusion that the check was made out and taken in the condition it now is for plaintiff's signature. From that we think it a proper inference that defendants took the check to plaintiff at her farm home intending to get her signature and not intending to take her to town to participate in the closing of the deal, where she might well have discovered to whom the property was being conveyed.

There is evidence of both parties heretofore set out of repeated discussions of this matter, discussions which might naturally follow if plaintiff's position is the true one, but which naturally would not have followed if plaintiff intended at all times that defendants were to own the property. Defendants argue that the long delay between knowledge of the grantees in the deed which plaintiff had in December 1944, and the bringing of this action in April 1946, shortly after the rather violent quarrel of November 1945, indicates that this is now a spite action to revoke a gift. It is to be remembered, however, that plaintiff was an elderly woman, alone save for these defendants, who had been her advisers and constant companions and helpers. Under those circumstances a natural hesitancy to bring the action may be understood.

There is the matter of the purchase by defendants of the adjoining lot, and we are asked to infer that plaintiff suggested it to defendants as a matter of protecting their interests in the property and thereby recognizing the gift. We think it just as natural an inference that defendants purchased to protect the interest which they thought they had secured.

There also is evidence given by defendants' attorney with reference to two wills that he had prepared for plaintiff. This evidence was admitted over objection. The propriety of the attorney so testifying and the admissibility of the evidence are not assigned here as errors. The testimony is that on April 25, 1944, in his office, plaintiff executed a will wherein she bequeathed $4,000 to the defendants jointly, and that thereafter on July 12, 1945, plaintiff executed a new will in which the special bequest was eliminated and which contained a statement that any gifts theretofore made to either of her children were not to be considered as assets of her estate. Before this evidence was offered in behalf of defendants, plaintiff testified on cross-examination that in the month of April 1944, she did not have an intention to make a substantial gift to defendants; she admitted the execution of a will in April 1944, stated she was not presently familiar with its contents, and did not remember the specific bequest; she was offered what was purported to be a copy of the will, and having read it said again that she did not remember having such a bequest in the will she executed; and she stated that she did not remember anything about executing a will in 1945. We attach no significance to this testimony. Neither the entire wills nor copies of them are here. Certainly an inference of an intent to make the gift and a recognition of one made cannot be established from the two isolated paragraphs of the two wills.

In an equity action this court tries issues of fact de novo upon the evidence in the record and reaches an independent conclusion without reference to the findings of the trial court, yet when the testimony of witnesses upon material issues is in irreconcilable conflict, we consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the other. Miller v. Knight, 146 Neb. 207, 19 N. W. 2d 153. In this case from the cold record we are able to con-

trast the almost uniformly direct and positive answers of the plaintiff with the many indirect, evasive, and sometimes argumentative answers of the defendants.

The rule is: "Direct evidence is not essential to establish fraud. It may be inferred from circumstances; but such inference must not be guesswork or conjecture, but the rational and logical deduction from the circumstances proved." Alter v. Bank of Stockham, 53 Neb. 223, 73 N. W. 667. See Rettinger v. Pierpont, 145 Neb. 161, 15 N. W. 2d 393.

"Fraud is never presumed and the party alleging and relying thereon must prove it. However, what constitutes fraud is a matter of fact in each case. Deception finds expression in such a variety of ways that courts have studiously avoided reducing its elements to positive definitions. Courts content themselves with determining from the facts in each case whether fraud does or does not exist, for whatever satisfies the mind and conscience that fraud has or has not been practiced is sufficient." Rettinger v. Pierpont, *supra.*

We are satisfied, as was the trial court, that this transaction was conceived and completed with the purpose of defrauding this plaintiff of the title to this property, and that the fraud had its inception at least as early as the giving of the instructions for the preparation of the deed.

The judgment of the district court is affirmed.

AFFIRMED.