**ACME DISTRIBUTING CO. et al.
v. RORIE.**

No. 4049.

United States Court of Appeals.
Tenth Circuit.
July 26, 1950.

---

Charles E. Dierker, Oklahoma City, Okl. (Harold L. Lipton, Chicago, Ill., on the brief) for appellants.

Hal Welch and James Bounds, Hugo, Okl., for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

Appellee, H. H. Rorie, sued and recovered a judgment against appellants, Acme Distributing Company and Peter Fox Brewing Company, in the sum of $10,000 as a deposit under a contract for the sale of beer between Acme as the seller for its parent corporation, the Brewing Company, and appellee as the wholesale buyer.

Under the terms of the contract, dated July 5, 1946, Acme agreed to sell and appellee and his partner Chambless agreed to buy stipulated quantities of beer within specified periods each year during the tenure of the contract. Clause, or paragraph, two of the contract significantly recites that to secure performance the appellee buyer had deposited with the seller Acme the sum of $12,000 and agreed to deposit the further sum of $36,000 on specified dates between July 16, 1946 and February 3, 1947, making a total of $48,000 to be deposited as security for the buyer's performance of the contract. If the buyer fully discharged the obligations of his contract the total deposit was to be applied against the purchase price of beer to be shipped to the buyer during the period from December 1, 1950 to July 1, 1951,—the obvious purpose of the deposit being to bind the distributor buyer to purchase beer from the appellants in agreed quantities at least until July 1, 1951. In the event the buyer failed to order or take delivery of or make proper payment for the beer contracted for in any month prior to December 1, 1950, it

was agreed that the sellers should apply so much of the deposit as might be required to pay the "actual damages sustained by the seller by reason of the buyer's failure" to purchase or take delivery of the beer under the contract until December 1, 1950. In the event of the buyer's default the sellers could, at their election, terminate the contract and be discharged from any further obligations thereunder. Under paragraph five the buyer warranted and represented that he was a licensed retailer under the applicable laws, statutes and regulations of the State of Oklahoma and the United States, and that he would continue to maintain all necessary licenses during the life of the agreement.

On August 14, 1946, clause, or paragraph, two of the contract was amended by the following letter memorandum:

"To secure the performance of the contract by the buyer the buyer has deposited with the seller the sum of $12,000 'the receipt whereof is hereby acknowledged' and hereby further agrees to deposit the further sum of $8,000 on or before August 30, 1946. This represents a total of $20,000 to secure the performance of said contract.

"All other terms of said contract, except the total amount involved which is hereby changed to a total of $20,000 and except the dates of payment, are to remain the same and to be in full force and effect." Signed "H. H. Rorie." "Accepted Acme Distributing Company, By T. H. O'Connor, Secretary."

In 1948 appellee Rorie brought this suit to establish his ownership of a $10,000 balance on deposit with Acme and Fox, alleging in effect that a $10,000 payment was made to Jack Chambless from the $20,000 deposit upon his authority and without any specific understanding as to the terms and conditions under which the remaining $10,000 would be held or refunded to him, and that no understanding existed concerning the status of the said $10,000. He asserted that because of the withdrawal and payment of the $10,000 to Chambless there was a mutual abandonment of the original contract, and that according to his information and belief appellants admit his ownership of the $10,000 and consequent right to a refund in cash. In the alternative he alleged that if he was not entitled to a judgment for the $10,000 balance in cash, he was entitled to purchase beer at the local market price under customary arrangements for the amount thereof. In that connection, however, he asserted that he was not then engaged in the business of distributing beer or any other beverage, and was not equipped to do so, and had no license or permit either from the State of Oklahoma or the United States of America.

After the separate motions of the appellants to dismiss were overruled Acme answered denying the allegations of the complaint, except that it admitted the deposit with it of $12,000 on July 6 and a further deposit of $8,000 on the following August 14, under the terms of the contract, to further guarantee its performance, and alleged that the plaintiff had breached the contract, as amended, thereby forfeiting any monies on deposit under the terms of the contract. The Brewing Company denied that it was in any way obligated to the plaintiff in any sum whatsoever.

Thereafter, appellants requested appellee to state the basis for his claim that there was a mutual abandonment of the original contract, and if there was an agreement to that effect the parties thereto. Appellee was also asked to state from whom he received the alleged information that the defendants admitted he was the owner of, and entitled to, the $10,000 on deposit, and if such agreement and information were in writing to furnish appellants with a copy of the same. Appellee answered the inquiry stating that he and his former partner Chambless had agreed that the $20,000 deposit belonged to them jointly and equally, and that if Acme and the Brewing Company would release the $10,000 Chambless would use it in connection with the discharge of his income tax obligations; that it was understood between the appellee, Chambless, Acme and the Brewing Company that the remaining $10,000 was the property of the appellee, and would be refunded to him within a reasonable length of time. That although such understanding "was not specific as to terms and conditions," in a later telephone conversation appellee was

advised that if he would execute the written authority for the discharge of the first $10,000 for the benefit of Chambless he could rest assured that the remaining $10,000 would be subject to his use and benefit as soon as the financial affairs of Acme and the Brewing Company reasonably permitted. That in the said telephone conversation appellee was informed that if conditions would not reasonably permit his use of the $10,000 deposit for the purchase of beer, it would be refunded to him in cash; that this telephone conversation occurred as the result of "importunities on the $20,000 trust fund in order to protect him from probable pending prosecution by the Federal Government for income evasion." He stated that he did not claim a written agreement in regard to the transaction. He went on to state that after the telephone conversation he was denied a wholesaler's basic permit by the Treasury Department so long as he was associated "with the said Jack Chambless"; that this information was conveyed to the appellants and appellee thereafter completely withdrew from the business and Chambless continued to wholesale beer, presumably under the contract, without a license, but without plaintiff's consent or approval.

When the case came on for trial the parties made opening statements consistent with the pleadings. After extensive colloquy between court and counsel the court indicated its intention to render judgment for the plaintiff for the amount of the $10,000 balance on deposit, plus interest, apparently on the grounds that the amendment of August 14, to paragraph two of the contract operated to completely supplant the original paragraph two, and that under the contract as thus amended Acme had no legal grounds for retention of the balance on deposit. At the same time the court apparently recognized Acme's right to recover its actual damages by reason of the appellee's default in the performance of the contract as amended. At this point counsel for appellants stated "we certainly want leave to plead damages if that is true," and later offered proof tending to show actual damages for the breach of the contract. This testimony was excluded, however,

"as not within the issues as they are now constituted." Apparently upon the pleadings, answers to interrogatories, and statements of counsel, the court entered judgment against the appellants in the sum of $10,000 with 5% interest. This appeal is from that judgment.

As we read the pleadings appellee did not contend that paragraph two of the original contract of July 5 was completely supplanted by the memorandum of August 14. Indeed, we do not believe that he could successfully do so. We agree with the trial court that the contract as amended is unambiguous, but contrary to the court's construction, we are certain that the purpose and effect of the memorandum was to change only the amount of the deposit and the dates on which payments were to be made. In the language of the memorandum "all other terms of said contract, * * * are to remain the same and to be in full force and effect." The idea that the memorandum was substituted for paragraph two was first mentioned in counsel's opening statement as one of the theories upon which he was entitled to recover.

The contention that the contract was mutually abandoned by the withdrawal of the $10,000 deposit for the benefit of Chambless is equally untenable. It was withdrawn on authority of this appellee, who executed the "receipt and release," and there is nothing in the conduct of the parties which can be fairly construed as an abandonment of the contract. The telephone conversation relied upon by appellee as confirmatory of his contention was never proven and the trial court stated that in the absence of proof of the conversation and the parties thereto, it could not, and would not, consider it. But even so, it is at most an attempt to vary the terms of a valid written agreement.

We can find nothing on the face of the pleadings, as enlarged by the answers to the interrogatories, or in the contract, as amended, entitling appellee to prevail. Certainly statements of counsel do not afford a valid basis for recovery.

On the face of the pleadings appellee has defaulted in the performance of

the contract, and now affirmatively admits that he is unable to perform, while Acme stands ready, willing and able to perform, and has offered to so prove. It is general law, followed in Oklahoma "That the party who has advanced money, or done an act in part performance of the agreement, and then stops short and refuses to proceed to its ultimate conclusion, the other party being ready and willing to proceed and fulfil all his stipulations according to the contract, will not be permitted to recover back what has thus been advanced or done." Toomey v. Sporn, 145 Okl. 38, 291 P. 22; Dunken v. Guess, 40 N.M. 156, 56 P.2d 1123; Moore v. Mosher, 88 Cal.App.2d 324, 198 P.2d 714; Kaufmann v. Baldridge, 10 Cir., 162 F.2d 793; Annotation 134 A.L. R. 1064, supplementing annotations 59 A.L. R. 189, 102 A.L.R. 852, and cases cited. Cf. Peter Fox Brewing Co. v. Collins, 10 Cir., 177 F.2d 1008; Dastrup v. Smuin, D.C. Cir., 179 F.2d 860. But, this contract provides its own measure of relief. It clearly provides that in the event of default appellants may apply the said deposit, or so much thereof as may be required, to the payment of actual damages sustained by reason of such default.

Rule 15(a), Fed.Rules Civ.Proc., 28 U.S. C.A. provides that amendments shall be freely allowed in the interest of justice, see Gillette Motor Transport v. Northern Oklahoma Butane Co., 10 Cir., 179 F.2d 711, and Rule 15(b) contemplates expeditious amendment of the pleadings to conform to the issues actually tried or presented. "If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits." See Rule 15(b).

We think that Acme and the Brewing Company should have been permitted to amend their pleadings to read on the contract and that the proferred testimony was admissible to show the breach and actual damages flowing therefrom.

The case is accordingly reversed and remanded with directions to proceed in conformity with the views herein expressed.

Reversed.